Complainant Gerald F. Jacobson, through a concern known as the Mortgage Service Bureau, arranged with the defendant The First National Bank of Bloomingdale for a Federal Housing Administration loan in the amount of $5,800 for the purpose of erecting a house. Twenty per cent., or $1,160, was to be lent to complainant when the roof was on, thirty per cent., or $1,740, when the house was brown-plastered, and the balance when the house was completed. When the first portion of the loan was to be made, the bank, on July 24th, 1939, delivered its check to the order of "Geraldine F. and *Page 441 
Adrienne O. Jacobson Mortgage Service Bureau," to the Bureau. Someone connected with the Bureau forged the endorsement of the names of complainants on the check and it was cashed by the Bureau and the proceeds divided between complainants and the Bureau, the complainants receiving the sum of $900 and the balance being retained by the Bureau as its commission in the transaction. The complainants received what they were entitled to on this first transaction. They were in ignorance as to how the check was drawn and that the check was forged. On August 24th, the bank turned over to the Bureau a second check in the amount of $1,740 made out to "Gerald F. Jacobson, Adrienne O. Jacobson and Mortgage Service Bureau." This second check was drawn by the bank on the Manufacturers Trust Company of New York. Again the signatures of complainants were forged as endorsements on the check and the check was cashed by the Bureau through the First National Bank of Paterson, and the entire proceeds appropriated by the Bureau, the complainants receiving none of it. Meantime, the complainants had executed notes aggregating $2,900 and executed a mortgage to the bank in that amount, which was recorded by the Bureau.
In November, for the first time, complainants discovered that the bank was claiming the amount of $2,900. An investigation disclosed the forgeries and that the second installment had never been received by complainants, but had been taken by the Bureau. The Bureau is out of business and insolvent.
Various forms of relief are prayed in the alternative, including prayers for restraint against proceeding on the mortgage or notes secured thereby, cancellation of the mortgage, reduction of the amount of the mortgage to the amount due, and specific performance of the agreement to make the loan in accordance with its terms. A motion was made to dismiss the bill, decision on which was reserved to final hearing under the rule, and the motion has been again renewed, and it is further contended after the final hearing that the bill should be dismissed as disclosing no equitable ground of action. On the one hand, it is claimed that complainants have an adequate *Page 442 
remedy at law by suit against the First National Bank of Paterson, which procured the cashing of the second check with the fraudulent endorsements. On the other hand, it is contended that complainants will be adequately protected by interposing a defense in a possible future foreclosure of the mortgage that the amount due thereon is less than the face of the mortgage. In my opinion, both of these contentions are unsound. The agreement of the bank was to lend to complainants the second installment of $1,740 when the house was brown-plastered. The bank did not carry out this agreement. The notes and mortgage are assignable, and complainants would have no remedy in a suit in the hands of an innocent assignee. Not having received the $1,740, complainants are in a position of having an uncompleted house on which it would seem to be impossible to borrow additional money elsewhere to complete it. There is no reason why complainant should be compelled to sue the Paterson bank, which was a complete stranger to the transactions between the parties.
There was never any actual or implied authority granted by complainants to the Bloomingdale bank authorizing the Bureau to receive the moneys agreed to be lent, as agents for complainants. As shown by the evidence the limit of the agency of the Bureau was to negotiate the mortgage. Complainants had no knowledge that the bank had added the name of the Bureau to that of complainants as payee of the two checks, which circumstance undoubtedly assisted the Bureau in negotiating them with the forged endorsements. The limitation of the agency of the Bureau is analogous to the well-established principle to the effect that the authority of an agent to collect interest on a mortgage does not grant any apparent authority to collect the principal of the mortgage. Dorman v. West Jersey Title and Guaranty Co.,92 N.J. Law 487; Kues v. Di Maria, 108 N.J. Eq. 347. It is, therefore, clear that the bank failed to carry out its contract with complainants to make the second payment, and there were no facts or circumstances shown at the hearing which would show that the complainants were in anywise to blame.
The transactions have resulted in complainants being in the position of having an uncompleted house with a mortgage *Page 443 
on it for an excessive amount, and with their hands tied so that without the help of this court, they cannot extricate themselves. In my opinion, the only adequate relief that the complainants can have is by decree of specific performance compelling the defendants to carry out their agreement at this time to the extent of payment to them of the amount of the second installment, namely, $1,740. The necessary conditions to entitle complainants to the balance to bring the total loan up to $5,800 have not yet been met, since the house has not yet been completed, and, therefore, any application for specific performance for the third and final installment would be premature. The decree that the bank make the payment of $1,740 is not a mere money judgment, but carries into effect the contract of the parties validating the $2,900 mortgage and placing the complainants in the position where they can complete the building and the original contract, in accordance with those terms. In relying upon the carrying out of the contract, the complainants have changed their position by the creation of the mortgage, so that it is clear to my mind that the remedy at law would be inadequate. This suit is in the nature of one quia timet, since the invalidity, at least in part, of the mortgage can be shown only by extrinsic evidence. Estate of Gilbert Smith, Inc., v.Cohen, 123 N.J. Eq. 419. The court having jurisdiction because of the existence of the mortgage, which is voidable in part, will grant the appropriate relief, even though it is in form a decree for the payment of money only.
A decree will be advised in accordance with this opinion. *Page 444