This is a suit commenced by the complainant for the purpose of setting aside the record of cancellation of a tax sale certificate as the same appears of record in the Ocean County clerk's office. The facts as elicited at the time of final hearing show that on October 28th, 1936, the Township of Berkeley agreed to sell a certain tax sale certificate to George Meredith Marrow, Reynolds Marrow and Mary Phillips Rosemary Marrow, encumbering Block 20, Cedar Crest, Pinewald, Berkeley Township, New Jersey. At the time of the agreement there was then due the municipality approximately $2,930.27. Under the terms of the agreement, the tax sale certificate was sold to the above named Marrows for the sum of $1,500, which consideration was to be paid in the following manner: $50 at or before the date of the execution of the agreement, and $25 per month each and every month thereafter until the balance was paid. The complainant, shortly after the date of the agreement, entered into actual possession of the property and has continued to reside therein.
The complainant is the mother of George Meredith Marrow, Reynolds Marrow and Mary Phillips Rosemary Marrow. Reynolds Marrow died in the year 1942 intestate, unmarried *Page 142 
and without issue, leaving him surviving this complainant and the brother and sister above mentioned. George Meredith Marrow and Mary Phillips Rosemary Marrow have assigned all of their interest in and to said agreement to complainant.
Neither the original parties purchaser nor the complainant ever complied with the terms of the agreement in making payments as therein provided. The last payment made by the complainant was in the amount of $5 and was paid on September 14th, 1946. The next two preceding payments were in June, 1946, in the amount of $5 and in February, 1946, in the amount of $6.49. These payments are typical of the irregularity with which payments were made and accepted. Scattered payments in various amounts were made by the complainant and accepted by the Township of Berkeley from the date of the agreement until September 14th, 1946. These payments were not in strict compliance with the terms of the agreement to sell.
The owner of the fee at the time of the sale of the property by the municipality for the non-payment of taxes due it was one John H. Newman, in whose name title continued until June 11th, 1946, at which time he conveyed the premises involved to the defendant Andrew L. Stone. Andrew L. Stone thereafter applied to the municipality in an attempt to extinguish the lien of the tax sale certificate above referred to. Contemporaneously with the negotiations between Andrew L. Stone and the municipality, complainant and her son, George Meredith Marrow, likewise had some conferences and correspondence with Judge Camp, solicitor for said municipality, in connection with the ascertainment of the balance due under the agreement. All of these several negotiations finally resulted in a letter dated September 30th, 1946, from Judge Camp to Mrs. Laura Diamonde, advising her concerning her agreement to purchase this tax sale certificate, as follows:
"This matter will be further considered and, I believe, finally disposed of at the next meeting of said Committee, which will be held at Township Committee Chambers, Town Hall, Bayville, New Jersey, October 10, 1946 at 7:30 P.M." *Page 143 
On October 9th, 1946, the complainant offered the balance due, namely $572.69, to Judge Camp at his office, who advised her that she should appear before the Township Committee at the time and place set forth in his letter of September 30th, 1946. On October 10th, 1946, the complainant attended the meeting, held as referred to in the letter of Judge Camp, and there offered to pay the sum of $572.69 for an assignment to her of the tax sale certificate. This tender of payment was refused and the Township Committee adopted a resolution terminating the agreement to sell above referred to and authorized the cancellation of the tax sale certificate upon the payment of $800 by Andrew L. Stone.
Andrew L. Stone and the Township of Berkeley, by their answers, deny the right of complainant to have a cancellation of the tax sale certificate, as it now appears at the county clerk's office, voided, and the tax sale certificate reinstated and assigned to her. By counter-claim, Andrew L. Stone prays in the alternative that if such tax sale certificate should be ordered reinstated that the amount due thereon should be ascertained, making due allowance for the value of an alleged illegal use and occupation of the premises by the complainant and for the damages which have resulted to the freehold and the improvements by the acts of the complainant while a trespasser.
The Township of Berkeley's position is that time was of the essence of the agreement and that the failure of the complainant to comply punctually with the payments as called for under the agreement resulted in a forfeiture and termination of the contract. Complainant, on the other hand, contends that time was not the essence of the agreement or, if time were ever the essence of the agreement, that the municipality, by its conduct, waived such requirement.
Time may be made the essence of a contract by the express stipulations of the parties, or it may arise by implication from the nature of the property, or the avowed objects of the seller or the purchaser. Grigg v. Landis, 21 N.J. Eq. 494. It is to be noted that in this agreement there is no express phraseology which would, of itself, make time of the essence of the agreement. If we are to arrive at the conclusion *Page 144 
that time was intended to be of the essence of the agreement it must be as a result of an implication consistent with the nature and circumstances of the transaction. See Schwartz v. HoffmanFoundation, c., Corp., 139 N.J. Eq. 349; 51 Atl. Rep. 2d240.
In order to determine this question it is, of course, necessary to examine the conduct of the parties in connection with the alleged default in payments to ascertain whether time was an initial essential element and if the answer to such inquiry is in the affirmative, to further ascertain whether the force of its mandate had been waived. This is particularly so where, as here, there is no express written stipulation to that effect in the contract. It has been well-recognized that where a mandatory undertaking makes punctuality an express stipulation, such stipulation is an intrinsic, essential and vital term of the contract and failure to comply therewith is fatal to the contractual rights of the delinquent party.
However, in Norton v. Miller, 138 N.J. Eq. 235;47 Atl. Rep. 2d 738; affirmed, 139 N.J. Eq. 310; 50 Atl. Rep.
2d 895, the court said as follows:
"It is equally incontrovertible that such a provision declaring time to be of the essence is not in all circumstances conclusively operative. Its initial effectiveness may be subsequently waived and the intention to annul it may be disclosed by the conduct of the parties. Kerney v. Johnson,104 N.J. Eq. 244; 144 Atl. Rep. 808; Isbill v. Duffy, 110 N.J. Eq. 429; 160 Atl. Rep. 326; Bommelyn v. Moss, 123 N.J. Eq. 236;197 Atl. Rep. 6."
 See, also, Hudson City Savings Bank v. Brockhurst, 138 N.J. Eq. 582; 49 Atl. Rep. 2d 436.
In Kerney v. Johnson, supra, the court said as follows:
"It is true that the contract provides in a printed clause that time shall be of the essence of the contract; but, as the learned Vice-Chancellor very properly held, such a statement is not conclusive where it appears from the evidence and the conduct of the parties that they did not in fact so treat the contract, and did not in fact consider that time should be of the essence of the contract, but in reality waived by their own conduct that defense which they now urge as a barrier to *Page 145 
recovery in the case. In such an eventuality, where the parties themselves have practically construed their own contract, such a clause does not control the situation, but the circumstances and the equities of the case as defined by the conduct of the parties present the best interpretation as to the meaning of such a clause; for concededly, under the settled construction of the law upon this subject, the acts of the parties in dealing with the subject-matter of their contract afford the best indication of their intention either to execute it or to annul it. Actaexteriora indicant interiora secreta. 8 Coke Rep. 291."
The conduct of the parties here demonstrates that if time could ever have been considered an essential or vital element of the contract because of the nature of the subject-matter of the agreement, that its requirement was waived, and a failure to comply with the strict requirement of payment was at least acquiesced in by the Township of Berkeley. An examination of the statement furnished by the tax collector of the Township of Berkeley demonstrates that in no year during the term of this contract was some payment not made. These payments ran in irregular amounts from $5 to $126.90. At no time did the Township of Berkeley insist upon a strict compliance with the terms of payment by a threat of terminating complainant's rights thereunder, or an actual attempted termination until October 10th, 1946. The most that can be said concerning any insistence on the part of the Township of Berkeley for prompt payment was that the tax collector, on several occasions, suggested, advised or told Mrs. Diamonde to be more prompt with her payments. By the conduct of the Township of Berkeley in accepting the amounts from Mrs. Diamonde over a ten-year period, there appears a practical construction accorded to the contract inconsistent with any recent insistence upon a strict compliance with the contractual proviso for payments.
In view of all of the circumstances, the parties cannot be said to have considered time as an essential element of the contract at the time of its execution, or, in any event, if by any strange construction, time should so be considered an essential element, the Township of Berkeley must be held by *Page 146 
its conduct of acquiescence in the alleged breach, to have annulled its effectiveness and to have waived its rights to an insistence upon a strict temporal compliance.
The complainant's proffer of the payment of the balance due on the tax sale certificate on October 10th, 1946, should have been accepted by the Township of Berkeley and the tax sale certificate assigned to her. In view thereof, the Township of Berkeley was without legal authority to accept the payment from Andrew L. Stone and to cancel the tax sale certificate. Since Andrew L. Stone had full knowledge of complainant's claim, as is exhibited by the testimony, he cannot be held an innocent purchaser without notice.
Complainant's prayer, therefore, for an avoidance of the cancellation of the tax sale certificate and an assignment to her thereof upon the payment of the balance due thereon will be granted.
By the same token, since it has now been proven that Andrew L. Stone is the owner in fee of the property, he will be permitted to redeem the property from the tax sale certificate upon payment to complainant of the amount due her, as required by the statute in such case made and provided. In determining the amount so found to be due, it must be borne in mind that the complainant was without any legal right to enter into possession of the property. Under the Tax Act of 1918, P.L. 1918 ch. 237 § 34, as amended, the purchaser of a tax sale certificate was entitled to immediate possession of the property sold, and to all of the rents and profits thereof after the date of the recording of the tax sale certificate. In 1929, however, the legislature, by chapter 169 of the Pamphlet Laws of that year, deleted from the statute this right to possession. The entire subject has been treated most ably in Forster v. Davenport, 128 N.J. Eq. 385;16 Atl. Rep. 2d 614. In 1936, when complainant entered into possession of the real estate she did so in the absence of any possessory right and was a trespasser.
By virtue of P.L. 1943 ch. 144 p. 393, a municipality was entitled to possession of the real estate described in the tax sale certificate where it became the purchaser at a sale for delinquent taxes. This, however, did not afford any right to *Page 147 
the complainant to enter into possession under her agreement to purchase the tax sale certificate.
The contention of the complainant that her intentions in taking possession were good, in that she preserved the property, cannot change that which is essentially a trespass into lawful possession. See Bruch v. Carter, 32 N.J. Law 554, andTaylor v. Borgfeld, 139 N.J. Eq. 177; 50 Atl. Rep. 2d654. Therefore, since the complainant was a trespasser at the very inception of her possession of the property and has so continued to the present date, she is liable to Andrew L. Stone for the reasonable rental of the premises subsequent to his obtaining title, i.e., June 11th, 1946, and she is likewise liable for any damages which she may have caused to the property since that date. In determining the amount due complainant under her tax sale certificate, proper allowance must be made for both the amount of rental above referred to and the damage to the real estate. Unless counsel can amicably determine the amounts of these several elements, the matter will be referred to a master for determination.
A decree will be advised accordingly.