137 N.J. Super. 500 (1975)
349 A.2d 564
SELECTIVE BUILDERS, INC., PLAINTIFF,
v.
HUDSON CITY SAVINGS BANK, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided December 2, 1975.
*502 Mr. William J. O'Shaughnessy for plaintiff (Messrs. Clapp & Eisenberg, attorneys).
Mr. Hugo M. Pfaltz, Jr. for defendant.
KENTZ, J.S.C.
This is a breach of contract action. By way of remedy plaintiff Selective Builders, Inc. (Selective) seeks specific performance and incidental damages or, in the alternative, general compensatory damages. Defendant Hudson City Savings Bank (Hudson) denies that it breached the contract and contends that the contract was broken by Selective.
Selective, a New Jersey corporation, operates a general construction business. It is the owner of premises located in Bensalem Township, Pennsylvania and has undertaken to construct thereon a garden apartment complex commonly known as Park Terrace.
Hudson is a banking institution of the State of New Jersey and as such is engaged in the mortgage lending business. Selective applied to Hudson and obtained a permanent mortgage loan commitment on said property on March 11, 1974 in the base amount of $1,200,000. The commitment agreement was in writing and signed by the parties. It provided, among other things, that it would "automatically expire" unless the loan was closed by January 1, 1975 and that the proceeds of the loan would be disbursed only upon "final inspection."
The mortgage loan did not close prior to January 1, 1975 and Hudson contends that the failure to close by that date was the fault of Selective. Selective maintains that Hudson *503 breached the agreement and that therefore Selective is entitled to the relief sought in this action.
It is not disputed that Selective had not fully completed the construction of the garden apartment project by January 1, 1975. Certain minor work in various apartment units, such as carpeting, tiling and other touchup work was not finished. Most of this work had not been completed in those apartment units that had not been rented. In the nonrented apartments the heat had not yet been turned on due to the fact that each apartment was on a separate electrical heating unit and Selective did not want to incur additional heating costs until an apartment was rented. Without heat it would not have been practicable to complete these items of unfinished work. Admittedly, there was also some general "mop up" work to be done in or about the premises. A satisfactory explanation was given why this work had not been completed. The approximate dollar amount of all of the unfinished work at the premises was $20,000
In November 1974 Selective proposed to Hudson that the mortgage loan closing take place with a "holdback" or an escrow in the amount of $20,000, which sum would be retained by Hudson until there was 100% completion and thereupon the amount withheld would be paid over to Selective. This type of closing is not uncommon in mortgage loan transactions where new construction is involved. Upon receipt of this request Hudson did take the proposal under consideration and by its conduct did lead Selective to believe that such a closing might be possible. Toward this end Hudson caused the property to be reinspected on two occasions in order to determine if this type of closing would be feasible. Notwithstanding, Hudson, by letter dated December 24, 1974, notified Selective for the first time that the project would have to be fully completed, ready for occupancy, and the loan closed by January 1, 1975 or the commitment would be null and void. Because of the shortness of time allowed by this notice and particularly because of the intervening holidays, it was virtually impossible for *504 Selective to comply with the notice and as a result the closing did not take place.
The first question to be decided is whether Hudson had the right under the commitment agreement to require 100% completion of the project by January 1, 1975. To answer this question it is necessary to determine the intention of the parties. Intention may be gleaned from the relations of the parties, the surrounding circumstances and the objects of the parties. Applying these guides, it would seem from the language used in the commitment agreement that such completion was not intended by Hudson. There was no such requirement expressly stated in the commitment nor can such condition be implied from the expressed provisions contained therein. See Schultz v. Kneidl, 56 N.J. Super. 575, 584-585 (Law Div. 1959), aff'd 59 N.J. Super. 382 (App. Div. 1960). There was nothing in the nature of the contract or the surrounding circumstances which could be the basis for this condition. See Tessmar v. Grosner, 23 N.J. 193, 201 (1957); Casriel v. King, 2 N.J. 45, 50-51 (1949). Certainly, the conduct of the parties did not in any way give rise to such a condition.
Nevertheless, the project was at least 95% finished at the time in question and thus substantially completed. Substantial completion is compliance with this type of contract in the absence of any expressed agreement to the contrary.[1] In St. Paul & Chase Corp. v. Manufacturers Life Ins. Co., 262 Md. 192, 278 A.2d 12 (Ct. App. 1971), the court was confronted with substantially the same issue in a similar factual setting as presented here, and referring to the mortgage loan commitment commented as follows:
[T]his building was substantially completed, and that was all that was required so far as the contract was concerned; second, that *505 Manufacturers had more than adequate protection by an escrow of funds sufficient to complete the building, at which point the necessary certificates would have been forthcoming.
Assuming arguendo that Hudson had the right to demand full and complete performance by Selective by January 1, 1975, Selective argues that Hudson is estopped from asserting such right. There is merit to this argument. I am satisfied that the silence of Hudson until December 24, 1974 and its conduct and actions immediately prior thereto estops it from asserting such right.[2] Selective also urges that if this right did exist it was waived by Hudson.[3] It is well established that one may waive the delay in the performance of a contract whether time be of the essence or not. This waiver may be expressed or implied by written or oral agreement or by conduct indicating an intention to waive. Salvatore v. Trace, 109 N.J. Super. 83 (App. Div. 1969), aff'd o.b. 55 N.J. 362 (1970); Goodpasture v. Goodpasture, 115 N.J. Super. 189, 197-198 (Ch. Div. 1971); 17A C.J.S. *506 Contracts § 506. If Hudson had the right to demand 100% completion at time of closing, the conduct of Hudson constituted a waiver of this requirement.
Still assuming that Hudson had such a right to require 100% completion of the construction by January 1, 1975 and the estoppel theory or waiver doctrine are not applicable, Selective then contends that Hudson should have been given some reasonable extension of time for completion. Hudson disagrees and argues that time was of the essence for the performance of the commitment agreement. The language in the contract did not expressly state that time was of the essence. It provided that the commitment would automatically expire if the loan was not closed by a specific date. In Salvatore v. Trace, supra, at 91 the court said:
Ordinarily, equity does not regard time as of the essence of an agreement. When a certain period of time is stipulated in the contract for its completion, or for execution of any of its terms, equity treats the provision as formal rather than essential. Delay, unless willful or unreasonably long or prejudicial to the other party, is not of itself a reason for denying the relief of specific performance. [190 N.J. Super. at 91]
There was no evidence that any delay in the completion of the project by Selective was the result of willful or bad faith conduct on its part. Nor was any such delay unreasonably long or prejudicial to Hudson.
Time of the essence may arise by implication from the nature of the subject matter of the contract or from the objects of the contracting parties. Hoffman v. Perkins, 3 N.J. Super. 474 (Ch. Div. 1949); Diamonde v. Berkeley Tp., 142 N.J. Eq. 140 (Ch. 1948). This is not the situation here. Time of the essence could not have arisen in this agreement by implication.
Assuming arguendo that time was of the essence in this commitment agreement, such provision could have been waived by the parties. Salvatore v. Trace, supra; Hoffman v. Perkins, supra; Hudson City Savings Bank v. Brockhurst, 138 N.J. Eq. 582 (Ch. 1946); Norton v. Miller, 138 N.J. *507 Eq. 235 (Ch. 1946). I conclude that if time was of the essence of the agreement, the conduct and the actions of Hudson were sufficient to establish a waiver of this provision.
Furthermore, it is a general rule that a contract is to be construed most strongly against the party preparing it. Trautwein v. Bozzo, 35 N.J. Super. 270 (Ch. Div. 1955), aff'd 39 N.J. Super. 267 (App. Div. 1956). See Summer v. Fabregas, 52 N.J. Super. 399 (App. Div. 1958). Similarly, where in case of doubt as to the meaning of a written contract, the contract will be construed against the party who prepared it. Buscaglia v. Owens-Corning Fiberglas, 68 N.J. Super. 508 (App. Div. 1961), aff'd 36 N.J. 532 (1961). Hudson prepared the mortgage loan commitment agreement. It had considerable experience in the mortgage lending business and was certainly knowledgeable in the preparation of such agreements. If Hudson wanted to require 100% completion by Selective prior to the disbursement of the mortgage proceeds or to make time of the essence it could have so expressly stated. Failing to do this, the contract with respect thereto should be interpreted against Hudson under the usual principles of construction.
By reason of the foregoing, time was not of the essence of this contract under any circumstance and Selective was entitled to a reasonable extension of time for performance. Of course, Hudson may now make time of the essence by notice to Selective, in which case the time then set must be reasonable in order to allow performance. Labash v. Mancini, 14 N.J. Super. 116 (Ch. Div. 1951).
The next issue to be decided is the form of relief to which Selective is entitled. It maintains that the only adequate remedy which will offer full redress is specific performance.
Generally, specific performance is allowable when there is not an adequate remedy at law. Centex Homes Corp. v. Boag, 128 N.J. Super. 385 (Ch. Div. 1974). The evidence discloses that Selective has been trying to arrange for other *508 suitable mortgage financing since January 3, 1975 without success. In St. Paul, supra, the court observed:
[T]he would be permanent mortgage lender must contemplate that if, at the last minute, it cancels its commitment such action would be disastrous to the borrower; that in such event obtaining a new permanent mortgage loan would be well-nigh impossible, for the reason that whatever brought about the cancellation would in all likelihood prevent another lender from entering the fray.... [278 A.2d at 36]
The construction mortgage lender has threatened foreclosure, in which event Selective would stand to lose its equity in the project and its substantial investment of time and effort. Furthermore, the principal stockholders and officers of Selective personally guaranteed the note given to accompany the construction mortgage and would be liable in any deficiency proceeding thereon. The evidence further discloses that the construction lender has not instituted any foreclosure action because the outcome of the proceeding now before this court might make such action unnecessary.
Equity will generally grant specific enforcement of contracts to lend money where there is no adequate remedy at law and there is no other method of relief. Camden v. South Jersey Port Comm'n, 4 N.J. 357, 373-374 (1950); Jacobson v. First Nat. Bank of Bloomingdale, 129 N.J. Eq. 440 (Ch. 1941), aff'd o.b., 130 N.J. Eq. 604 (E. & A. 1942). My research does not disclose any authority in New Jersey for or against the specific enforcement of mortgage loan commitment agreements. However, in other jurisdictions it has been held that land is unique and an agreement to lend money by mortgage, like an agreement to buy land, can be specifically enforced. Southampton Wholesale F. Term v. Providence P.W. Co., 129 F. Supp. 663, 664 (D. Mass. 1955); Cuna Mutual Ins. Society v. Dominguez, 9 Ariz. App. 172, 450 P.2d 413, 416 (Ct. App. 1969); cf. Leben v. Nassau Savings & Loan Ass'n, 40 A.D.2d 830, 337 N.Y.S.2d 310 (App. Div. 1972), aff'd o.b., 34 N.Y.2d 671, 356 N.Y.2d 46, 312 N.E.2d 180 (Ct. App. 1974). See Draper, "The *509 Broken Commitment: A Modern View of the Mortgage Lender's Remedy," 59 Cornell L. Rev. 418, 431-432, 439 (1974).
I conclude that it would be difficult to calculate the damages sustained by Selective by reason of the breach by Hudson and also that any damages awarded would not make plaintiff whole. Furthermore, the rights of third parties would be prejudiced if only damages were awarded. Clearly, there is no adequate remedy at law that would fully compensate Selective for the breach of this commitment agreement.
It is contended by Hudson that Selective is not entitled to the relief sought because it also breached other terms and conditions of the mortgage loan commitment in that it failed to submit certain documentation to Hudson as required and that it entered into a secondary mortgage financing arrangement. From all the evidence before me, I find no merit to this contention.
Hudson further argues that it is a mutual savings bank and its officers are under a fiduciary duty to its depositors not to make any investments of their funds which would be imprudent in the light of existing circumstances. Hudson's fiduciary duties towards its depositors give it no greater immunity from an action for breach of contract than that which is enjoyed by any other fiduciary. This argument is likewise without merit.
Hudson also seeks to bar recovery by Selective on the ground that Selective has suffered no damages because it already has an adequate existing first mortgage on the property in question. The evidence clearly shows that this is not so and that the present mortgage represents only a construction loan and not permanent financing.[4]
*510 A judgment for specific performance of the mortgage loan commitment agreement shall be entered in favor of Selective against Hudson.
Finally, Selective seeks in addition to the specific performance relief, incidental damages incurred as the result of the refusal by Hudson to consummate the mortgage loan. This court has authority to award such damages in those cases where a judgment for specific performance does not in itself give complete relief. Mantell v. International Plastic Harmonica Corp., 138 N.J. Eq. 562 (Ch. 1946).[5] The uncontradicted testimony was that Selective, in its efforts to obtain alternative mortgage loan financing, paid the sum of $4,100 to the Federal Housing Authority for an examination fee. It was also undisputed that Selective had obligated itself for the payment of one point to another mortgage lending company if a loan was committed.[6] If the mortgage company was not successful in obtaining the mortgage loan for *511 Selective, it would appear from the evidence that Selective had agreed to pay the sum of $5,000 to the mortgage company as a flat fee for its services. There was no evidence that the mortgage company obtained a mortgage commitment for Selective.
I am of the opinion that a judgment for specific performance by itself will not give to Selective full and complete relief. Additionally, I will award damages to Selective against Hudson in the amount of $9,100 with interest thereon from the date of entry of judgment.
NOTES
[1] See Power-Matics, Inc. v. Ligotti, 79 N.J. Super. 294 (App. Div. 1963); Jardine Estates v. Donna Brook Corp., 42 N.J. Super. 332 (App. Div. 1956). Also, 13 Am. Jur.2d, Building and Construction Contracts, § 43; 76 A.L.R.2d 815, § 5.
[2] Estoppel in pais or equitable estoppel is an equitable doctrine which denies a party the right to repudiate an act done or position assumed where such repudiation would work injustice to another who rightfully relies thereon. Highway Trailer Co. v. Donna Motor Lines, Inc., 46 N.J. 442, 449 (1966), cert. den. Mt. Vernon Fire Ins. Co. v. Highway Trailer Co., 385 U.S. 834, 87 S.Ct. 77, 17 L.Ed.2d 68 (1967); Rickenbach v. Noecker Shipbuilding Co., 66 N.J. Super. 580, 587 (Ch. Div. 1961). The remedy of estoppel is always applied so as to promote the ends of justice. In re Gravure Paper & Board Corp., 234 F.2d 928 (3 Cir.1956). An estoppel may arise by silence or omission where one is under a duty to speak or act. Summer Cottagers' Ass'n of Cape May v. Cape May, 19 N.J. 493 (1955).
[3] A waiver is the voluntary and intentional surrender of a known right. A waiver must take the form of an agreement founded on valuable consideration or it may constitute a clear, unequivocal and decisive act showing such purpose as to amount to estoppel in pais. Merchants Indemnity Corp. of N.Y. v. Eggleston, 68 N.J. Super. 235, 253-254 (App. Div. 1961), aff'd 37 N.J. 114 (1962). See East Orange v. Bd. of Water Com'rs, 41 N.J. 6 (1963); Long v. Hudson Freeholder Bd., 10 N.J. 380, 386 (1952).
[4] It is conceded that the mortgage instrument evidencing the temporary construction loan, as well as the mortgage note which it secures, bears a maturity date of April 1, 1993. It appears from the evidence that the practice in Pennsylvania is that the permanent mortgage is generally issued and recorded in the name of the construction lender and upon completion of construction, assigned to the permanent lender. The right and obligation to assign is assured by the execution of a separate document known as a "Buy-Sell" agreement. This was the procedure that was substantially followed here. The purpose of this practice is to deal with the peculiarities of the mechanic's lien law in Pennsylvania. It is designed particularly to protect the permanent lender (who succeeds to all the construction lender's priorities) against liens by laborers (or materialmen) which are not of record as of closing but, if filed within four months of completion of work, revert back to the commencement of any contractor's work. If a new mortgage were given, the permanent lender would take subject to such liens. The assignment procedure avoids this.
[5] While a court of equity may also award incidental damages where a judgment of specific performance has been entered, the rule of damages at law does not necessarily apply to the computation of damages in an equity proceedings. Damages incidental to specific performance should be determined by the application of broad equitable principles. 81 C.J.S., Specific Performance, § 162.
[6] It appears that a point is 1% of the amount of the mortgage loan which may be committed. The payment of this amount is for the mortgage company's service fee for procuring and processing the mortgage loan.