## Equibank, N. A. v. Fidelco Growth Investors

*Joel Persky* and *Robert N. Hackett,* for plaintiff.
*Clyde W. Armstrong* and *Alan B. Rubenstein,* for defendant.

E. ROSS, *J.,* February 16, 1977—This matter is before the court after submission of written memoranda of counsel, on preliminary objections

of the defendant, Fidelco Growth Investors (Fidelco), to a complaint in equity filed by Equibank, N.A., plaintiff.

Plaintiff seeks specific performance of a buy-sell agreement and of a permanent commitment entered into by Fidelco. Defendant's preliminary objections assert that plaintiff has failed to state a cause of action and that plaintiff has a full, complete and adequate non-statutory remedy at law. The facts follow.

On October 18, 1972, Fidelco issued a permanent mortgage loan commitment to a real estate developer, A.P. & P. of Tara Hills, Inc. The commitment as later amended was in the amount of $4,000,000. A.P. & P. paid a substantial consideration for this commitment to Fidelco.

Relying on the commitment, Western Pennsylvania National Bank (W.P.N.B.), Equibank's predecessor, on June 21, 1973, issued a construction loan commitment to A.P. & P. in the same amount.

Also, on June 21, 1973, a buy-sell agreement was entered into by Fidelco, W.P.N.B. and A.P. & P. The agreement set forth the conditions under which Fidelco, the permanent lender, would purchase the construction loan. Contemporaneous with this A.P. & P. assigned the commitment to W.P.N.B. with Fidelco's consent.

The commitment was due to expire in June, 1974. A.P. & P., for consideration, exercised its option to extend the commitment through April, 1976.

The agreement provided that as a condition to Fidelco's obligation to purchase the construction loan, A.P. & P. "shall have completed construction in accordance with approved plans and specifica-

tions." It further provided that Fidelco would accept the certification of Construction Cost Consultants, Inc., or another architect or engineer acceptable to Fidelco, as to completion in accordance with approved plans or specifications.

On October 16, 1975, Construction Cost Consultants, Inc., issued a letter that construction was "substantially complete with the exception of the paving top course." On October 21, 1975, the letter of Frank G. Maragas stated that the project was completed "in accordance with plans and specifications approved by the undersigned."

On February 27, 1976, A.P. & P. requested Fidelco to purchase the construction loan, which Fidelco refused to do. A.P. & P. is now in default of said loan.

Equibank, successor to W.P.N.B., now seeks specific performance of the commitment (under which it is the assignee) and of the agreement (to which it is a party). The court must decide whether Equibank has stated a cause of action in equity or whether plaintiff has a full, complete and adequate remedy at law.

Specific performance, an equitable remedy, was fashioned to compel a party to a contract to do that which he has agreed to do: 71 Am. Jur. 2d, Specific Performance §1. Because it is an equitable remedy, the determination of whether or not the court should grant it depends upon broad and longstanding equitable principles as applied to the diverse factual patterns of each case.

It is clear that equity has no jurisdiction if an adequate and complete remedy at law exists: 27 Am.Jur.2d, Equity §86 et seq. The legal remedy must be as adequate and as complete as the remedy in equity and it must secure the entire right of

the party: Wood v. Goldvarg, 365 Pa. 92, 95, 74 A.2d 100 (1950); Rutherford Water Company v. City of Harrisburg, 297 Pa. 33, 38, 146 Atl. 113 (1929); Pionsard v. Pionsard, 117 Pa. Superior Ct. 313, 317, 178 Atl. 308 (1935). Equity can also act, not only where the legal remedy is inadequate, but also where it is inconvenient: Pa. R. Co. v. Bogert, 209 Pa. 589, 600, 601, 59 Atl. 100 (1904).

It is equally true that specific performance has been held to be unwarranted if the requested relief is simply the payment of money: Vandeventer v. Dale Construction Co., Pomeroy, Equity Jurisprudence, §2216 (5th ed. 1941); 41 A.L.R. 357; cf. Dorff v. Schmunk, 197 Pa. 298, 300, 301, 47 Atl. 113 (1900).

The factual situation before the court goes beyond the broad principles of equity cited above. In a very basic sense, the determination of this matter depends upon an old and often forgotten contract principle as to risk. What is the risk? Who should bear it?

To decide these questions it is essential to look at the matter before the court in a broad, practical manner, in light of the contracts entered into among the parties.

A.P. & P. wanted to construct a complex of townhouses and needed a substantial sum of money to do so. In order to obtain this money, A.P. & P. paid substantial consideration to Fidelco which in return issued a permanent commitment to A.P. & P. in the amount of $4,000,000. This commitment was a stand-by commitment. A.P. & P. then received a construction loan in the same amount from plaintiff in this matter. This construction loan was issued in reliance on Fidelco's commitment. A.P. & P. also assigned to Equibank

(or W.P.N.B.) Fidelco's commitment, and issued to Equibank security interests in the property, stocks of A.P. & P. corporation, a note in the amount of the loan, and other consideration.

Later the three parties entered into a buy-sell agreement under which, if certain conditions were met, Fidelco agreed to buy the note from Equibank for the purchase price (as defined in the contract) and to accept assignments from Equibank of all security interests and other rights with respect to the loan between A.P. & P. and Equibank.

What was the risk? The risk was and always has been that A.P. & P. would not be able to repay the money it was loaned. It was always within the risk that the building complex would become unviable and that A.P. & P. could not continue, that the money market would become tight and inhibit further financing to complete the project, that costs of A.P. & P. would exceed those costs initially projected, and that A.P. & P. would for some reason aside from the present development become insolvent. Regardless of how, where or why, the basic risk has been that A.P. & P. would run out of funds.

What did the risk involve? Involved in the risk was that sometime a party might have to foreclose against A.P. & P., or exert rights against A.P. & P.'s guarantors, Aristotal and Carol Maragas. This not only would entail expenditures to institute and maintain such actions but also time, trouble and aggravation in so doing.

Where should this risk lie? In the commitment and agreement as construed together, Fidelco has promised to be on standby to pay Equibank and accept assignment of the security interest. Equibank promised to make a loan to A.P. & P. to

provide temporary financing. The obligation of Equibank was never to be a permanent lender or to see the project through completion.

While defendant would have the court believe it merely entered into a contract to lend money or to buy commercial paper, the arrangement is not so simple. Fidelco not only agreed to buy a note, it also agreed to accept assignment of all documents and rights relative to the note. Fidelco, for consideration, agreed to stand somewhere on the side and bear the risk. If the facts had not developed as they have and the risk had not become actual, Fidelco would retain the consideration extended, buy the note, accept the assignments and collect the payments of principal and interest. But the foreseeable has happened. All that Fidelco has insured against is knocking at the door and Fidelco must answer.

Specific performance has been granted in similar situations. See Selective Builders, Inc. v. Hudson City Saving Bank, 137 N. J. Super. 500, 349 A.2d 564, 568, 569 (1975), and cases cited therein.

Defendant's argument is that cases such as Selective Builders, Inc., supra, are situations involving actions brought by the borrower and not the construction lender. In the present case, however, the commitment and the borrower's rights were assigned to Equibank. If the borrower has no rights and Equibank has no rights, who does? Certainly, Equibank stands in the shoes of A.P. & P. in enforcing these rights. Equibank also has rights as a party to the agreement.

As noted by Roger P. Groot in an article entitled Specific Performance of Contracts to Provide Permanent Financing, 60 Cornell Law Review 718, cited extensively by both parties:

"The viability of virtually every major construction project depends upon the availability of long-term financing. In an economy plagued by the twin-evils of inflation and recession and the burdens which they impose upon businesses, to confirm long-term lending transactions frequently break down."

A remedy at law is not adequate in the instant situation. St. Paul at Chase Corp. v. Manufacturers Life Insurance Co., 262 Md. 192, 278 A.2d 12 (1971), cert. denied, 404 U.S. 857 (1971), an action for damages in a similar factual condition as the present, exemplifies the complexities in proving and ascertaining damages in this type of situation. It is a task possible to complete, but the burden, inconvenience and complexity far outweigh the necessity of doing so. Because of the time, trouble and aggravation required the court doubts the adequacy of monetary compensation.

As noted by Groot, supra, at 741:

"In spite of the possible inefficiency of requiring a loan which may not result in a viable economic unit, the interests of the other parties involved are strong and the risk which has occurred is one that can properly be placed on the committed lender. That lender, if his judgment is correct and the project fails, still has the opportunity to salvage through foreclosure, purchase, and resale as well as through a deficiency judgment against the borrower."

The court believes this is the risk assumed by Fidelco, that damages are inadequate, complex and inconvenient and that specific performance is a proper remedy in this matter.

While it is true that plaintiff's complaint does not contain a general averment as to the fulfillment of

certain conditions, the pleadings are sufficient for the court to find that plaintiff has stated a cause of action. Defendant is not precluded from raising other defenses as it deems appropriate.

## ORDER

And now, February 16, 1977, after consideration of the preliminary objections of defendant, Fidelco Growth Investors, Inc., to the complaint in equity, of plaintiff, Equibank, N.A., it appearing to the court that plaintiff has stated a cause of action, that plaintiff has no adequate remedy at law and that specific performance is a proper remedy, it is hereby ordered that defendant's preliminary objections are dismissed, and further, defendant is ordered to answer the complaint within 20 days.