**Cornelius M. WHALEN, t/a Towson Associates Limited Partnership, to its own use and to the use of Robert Whalen Company, Inc.**

v.

**FORD MOTOR CREDIT COMPANY.**

**Civ. No. B–75–1792.**

United States District Court,
D. Maryland.

Aug. 15, 1979.

Michael L. Schwartz, David Freishtat, and Freishtat & Schwartz, Baltimore, Md., for plaintiff.

Paul V. Niemeyer, Jeffrey D. Herschman, and Piper & Marbury, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

This is an action arising out of the issuance of a loan commitment for a condominium project in Towson, Maryland. The plaintiffs are the owners, Towson Associates Limited Partnership and its general partner, Cornelius Whalen, and the general contractor for the project, Robert Whalen Co., Inc. The defendant is Ford Motor Credit Company (Ford Credit). In substance, the plaintiffs allege that Ford Credit breached its contractual obligations under the loan commitment by refusing to provide without justification the required funding when due. Jurisdiction is founded upon 28 U.S.C. § 1332, diversity of citizenship. Ford Credit has moved for summary judgment, contending that plaintiffs have no standing to bring this cause of action and that the financing commitment expired by its terms when the condition precedent that the building be completed was not satisfied. The plaintiffs have also moved for summary judgment on the ground that Ford Credit was bound to honor the commitment when the required architect's certificate of completion was issued. These motions have been well-briefed by both sides, and no hearing is necessary for their resolution. Local Rule 6.

### I. Factual Background.

Towson Associates developed a condominium project in Towson, Maryland known as the "Towson Center." The project is a 28-story building containing approximately 240 units. Ford Credit issued a commitment in February 1973 to Towson Associates to lend it $9,750,000 for a period of two years after completion of the project. During this two-year period, Towson Associates planned on completing the sale of condominium units to the public. In exchange for the commitment, Towson Associates paid Ford Credit $195,000 and also obligated itself to pay a release fee of 1% upon the sale of each unit. Under the terms of the commitment, Ford Credit was required to advance the funds as long as the building was completed by the expiration date, March 1, 1975. Pursuant to an amendment to the commitment, the expiration date was extended to September 1, 1975 in consideration of an additional fee of $48,750 which was paid by Towson Associates to Ford Credit.

In May 1973, Equibank, a national banking association, issued a construction commitment to Towson Associates, also in the amount of $9,750,000, to provide funds for the construction of the project. On August 28, 1973, the construction loan closing was held. At that time, Towson Associates, with Ford Credit's approval, assigned to Equibank the Ford Credit commitment; this was done to provide Equibank with additional security for the construction loan it had made to Towson Associates. Also on August 28, 1973, Ford Credit issued a letter which has been referred to by the parties as a buy-sell agreement. Under the terms of this agreement, Ford Credit agreed to purchase from Equibank the loan in the maximum amount of $9,750,000 provided that the construction loan documents were assigned to Ford Credit and that Towson Associates complied with all the terms of the Ford Credit commitment, including completion of construction by September 1, 1975. In short, Equibank financed the construction of the project, and Ford Credit agreed to provide the financing thereafter by purchasing the loan from Equibank if certain conditions were met.

On September 2, 1975, when the parties intended to close the purchase by Ford Credit of Equibank's loan to Towson Associates, Equibank tendered to Ford Credit the documents required under the buy-sell agreement and asked Ford Credit to provide the funding in accordance with its commitment and the buy-sell agreement. Ford Credit, however, inspected the building and determined that it was incomplete. It therefore took the position that the condition precedent to funding, completion of the building, was not satisfied, and it did not advance the $9,750,000.

The plaintiffs allege that the commitment and other relevant documents were fully complied with on their part, and, in particular, that construction was completed in accordance with the terms of the commitment. They have brought this action for breach of contract. Ford Credit's mo-

tion for summary judgment is premised on two grounds: (1) that plaintiffs have no standing to bring this suit, since they assigned away their cause of action when the Ford Credit commitment was assigned to Equibank, and (2) that Ford Credit had no obligation to provide funding since the building was not completed. The plaintiffs as well have moved for summary judgment, contending that Ford Credit as a matter of law was required to provide funding under its commitment on September 2, 1975.

II. *Standing.*

Ford Credit's position on this issue is straightforward. It argues that its obligation to lend money arises only out of the February 14, 1973 loan commitment and not out of any other document. Any claim for an alleged breach of the obligation to provide funding can only be made by the party to whom the obligation is owed. The commitment was originally issued to Towson Associates; however, since Equibank wanted added security, it had Towson Associates assign the commitment to it. Accordingly, Ford Credit contends that Towson Associates has no remaining rights under the commitment and therefore cannot bring this action alleging a breach of an obligation created only by that commitment.[1]

The court disagrees with this analysis. In determining the intention of the parties to this transaction, the court should construe together all the related documents concerning this financing scheme. *Rocks v. Brosius,* 241 Md. 612, 217 A.2d 531, 545 (1966). It is apparent to the court in doing so that Towson Associates does have standing to bring an action arising out of an alleged breach of Ford Credit's obligation to provide funding. Ford Credit's argument ignores the purpose of the transaction as a whole—to finance Towson Associates' efforts to develop the project.

If the Ford Credit commitment had not been assigned to Equibank and if no buy-sell agreement had been executed, at the completion of construction Ford Credit

---

1. Equibank has sued Ford Credit in a separate action on a similar claim that Ford Credit breached its obligation to fund. That suit has been settled.

would have been obligated to provide the necessary financing to Towson Associates, assuming compliance with the terms of the commitment. Towson Associates would then have used those funds to pay Equibank the money it was owed under the construction loan. Under the system envisioned by the parties in this case, instead of Ford Credit providing the funds to Towson Associates and Towson Associates reimbursing Equibank with those funds, Ford Credit would transmit the amount of the loan directly to Equibank who would assign the loan and related documents to Ford Credit. This procedure accomplished the same goal in a more efficient fashion; its purpose was to effect the loan to Towson Associates while affording each party with adequate safeguards in the event of a failure to perform by another party.

Construing all the related documents together, the court does not agree with Ford Credit that Towson Associates has no rights against Ford Credit in the event of its failure to lend the funds as required. This transaction, when viewed as a whole, clearly envisioned that Ford Credit had a duty to Towson Associates to finance its development of the project if certain conditions were met. Towson Associates, which has invested a substantial amount of money in the project in reliance on the commitment, may sue Ford Credit for its alleged breach of that duty; the assignment of the commitment to Equibank, while absolute on its face, does not indicate a contrary result when construed in light of the other documents and the purpose of the transaction. In addition, Towson Associates is a third-party beneficiary of the buy-sell agreement under which Ford Credit agreed to purchase the loan from Equibank, thereby providing financing to Towson Associates. *St. Paul at Chase Corp. v. Manufacturers Life Insurance Co.*, 262 Md. 192, 278 A.2d 12, 31, 32, *cert. denied*, 404 U.S.

857, 92 S.Ct. 104, 30 L.Ed.2d 98 (1971).[2] Having alleged that Ford Credit breached the buy-sell agreement, Towson Associates may bring this suit as the intended beneficiary of that agreement, *Spates v. Spates*, 267 Md. 72, 296 A.2d 581, 584 (1972).[3]

### III. *Completion.*

Ford Credit has also moved for summary judgment on the ground that the commitment expired in September 1975 because the condition precedent of completion of the building was not satisfied.

One of the conditions of the Ford Credit commitment was that the building "shall be completed in accordance with plans and specifications." The expiration date of the commitment, as extended by amendment, was September 1, 1975. While the extent to which the building was completed has been hotly contested, the parties do agree that the building was not fully completed by that date. Ford Credit argues that the commitment required that construction of the building be 100% complete by the expiration date, and that substantial performance could not satisfy the condition precedent of completion, citing *Della Ratta, Inc. v. American Better Community Developers, Inc.*, 38 Md.App. 119, 380 A.2d 627, 638 (1977). The court disagrees and holds that substantial completion of the building by the expiration date was sufficient to trigger the obligation to fund.

Ford Credit submits that *Della Ratta* holds that a condition precedent must be exactly fulfilled and that the doctrine of substantial performance does not apply to express conditions precedent. The Court of Special Appeals in *Della Ratta* stated:

> The substantial performance doctrine, therefore, applies to constructive conditions precedent and not to express conditions. Under certain circumstances, how-

---

**2.** In the belief that the law of Pennsylvania or Michigan may be applicable, the parties have provided references to the law of those states concerning third-party beneficiaries. Under the circumstances of this case, the law of Pennsylvania, Michigan and Maryland do not differ in any way that is significant to the resolution of this issue.

**3.** The court need not consider the other theories raised by Towson Associates in support of its position on the question of standing.

ever, where there is such a substantial performance of a promissory duty, an express condition qualifying that obligation which has not fully been complied with may sometimes be excused. To prevent a serious forfeiture of labor and materials, the party who has thus substantially performed his obligation may still recover the contract price, less whatever amount may be necessary to compensate the defendant for failure to comply with the condition. See 6 *Williston on Contracts* (Third Edition), § 805. As a general rule, however, an express condition must be fully performed.

Under no circumstances would the substantial performance doctrine apply here. Since the contract was wholly executory, no forfeiture was involved. Full compliance, therefore, with the express condition precedent was necessary.

380 A.2d at 638. Thus, the court in this portion of its opinion makes it clear that under certain circumstances the doctrine of substantial performance does apply to conditions precedent. Even if it is assumed that completion of the building was an express condition precedent to Ford Credit's duty of performance under the commitment, the court concludes that substantial performance, not full performance, is all that is required to satisfy that condition under the circumstances of this case. Towson Associates has incurred substantial expense in its efforts to develop the project, and Ford Credit has received in exchange for its commitment over $200,000 in fees from Towson Associates. This is a quite different factual situation from that involved in *Della Ratta*. It would be quite inequitable to allow Ford Credit to retain the fees it has received and avoid its obligations under the commitment simply because the building was not 100% complete.

The court's conclusion that substantial completion is sufficient to satisfy the condition of completion of the building is firmly supported by the cases of *St. Paul at Chase Corp. v. Manufacturers Life Insurance Co.*, 262 Md. 192, 278 A.2d 12, 29–32, *cert. denied*, 404 U.S. 857 (1971); *Selective Builders, Inc. v. Hudson City Savings Bank*, 137 N.J.Super. 500, 349 A.2d 564, 566–67 (1975); and *First National State Bank v. Commonwealth Federal Savings and Loan Association*, 455 F.Supp. 464, 468–69 (D.N.J.1978). In *St. Paul at Chase*, the Court of Appeals adopted the trial court's opinion, which held that substantial completion satisfied a condition in a loan commitment that reports be furnished from an inspector certifying that construction had been "satisfactorily completed" and from an architect certifying that construction had been "completed in accordance with the plans and specifications." 278 A.2d at 21, 32. *Selective Builders* held that substantial completion, not 100% completion, was sufficient compliance with a loan commitment which provided that the proceeds of the loan would be disbursed only upon "final inspection." 349 A.2d at 566–67. In so holding, the court stated that "[s]ubstantial completion is compliance with this type of contract in the absence of any expressed agreement to the contrary." *Id.* at 567. In *First National State Bank*, the loan commitment included a provision that "[t]he entire project shall be constructed according to the plans and specifications." 455 F.Supp. at 467. In rejecting the lender's argument that it was not bound by the commitment since the building was not completed, the court stated:

> it is clear that a mortgage lender is bound to perform once the building contractor has "substantially completed" construction. When the contractor has fairly met this requirement, the mortgage lender may no longer avoid its commitment, although he may be entitled to a set-off for minor defects or omissions. All that is required of the building contractor is a good faith compliance with all the important particulars of the plans and specifications. One hundred per cent completion, unless called for, is not necessary.

*Id.* at 468–69.

Ford Credit has attempted to distinguish these cases on the basis that the loan commitment involved in each of them contained language different from that present in the

Ford Credit commitment. The court recognizes that such differences do exist. However, the import of all three cases is the same; the lender may not avoid his commitment once the building has been substantially completed, unless 100% completion is expressly required by the commitment, which it was not in the Ford Credit commitment. Ford Credit's position that full and exact completion of a large construction project such as this one is required as a condition precedent to its obligations under the commitment is somewhat unreasonable. If that were the case, no borrower in circumstances such as these could rely on the commitment because of the immense difficulties present in bringing, by a specific date, a complex project to the state of 100% completion without a single item being left unfinished. It is not surprising that Ford Credit has been unable to cite any case in which a court has found that a loan commitment contained such a requirement. For these reasons, Ford Credit's motion for summary judgment will be denied.

IV. *Plaintiffs' Motion for Summary Judgment.*

██ The plaintiffs argue that they are entitled to summary judgment on the issue of liability on the ground that the issuance by the architect of a certificate concerning completion required Ford Credit to provide funding pursuant to its commitment. This motion will be denied. There are factual issues concerning the issuance of the various certificates and the state of completion of the building which need to be determined at trial. Summary judgment, therefore, is inappropriate.

Accordingly, it is this 15th day of August, 1979, by the United States District Court for the District of Maryland, ORDERED:

1) That Ford Credit's motion for summary judgment be, and hereby is, DENIED; and

2) That plaintiffs' motion for summary judgment be, and hereby is, DENIED.