**CITY CENTRE ONE ASSOCIATES, a Utah limited partnership, Plaintiff,**

**v.**

**TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA, a New York not-for-profit corporation, Defendant and Counterclaimant,**

**v.**

**CITY CENTRE ONE ASSOCIATES, a Utah limited partnership, Price/Prowswood, Ltd., a Utah partnership, Price Development Company, a Utah corporation and the Prowswood Corporation, a Utah corporation, Defendants to Counterclaim.**

**Civ. A. No. 86–C–0332A.**

United States District Court, D. Utah, C.D.

March 31, 1987.

See also 655 F.Supp. 1431.

Reed L. Martineau, Max D. Wheeler, Damian C. Smith, of Snow, Christensen & Martineau, Salt Lake City, Utah, for plaintiff/defendants to counterclaim.

L. Ridd Larson, Larry G. Moore, Ira B. Rubenfeld, of Ray, Quinney & Nebeker, Salt Lake City, Utah, for defendant and counterclaimant.

## MEMORANDUM OPINION ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

ALDON J. ANDERSON, Senior District Judge.

## INTRODUCTION

On March 27, 1984, defendant Teachers Insurance and Annuity Association of America, a New York non-profit association, entered into a loan commitment agreement with Price/Prowswood LTD., whereby defendant agreed to lend Price/Prowswood $14.5 million for the construction of an office building in Salt Lake City. The agreement was drafted by the defendant. Price/Prowswood subsequently assigned its interest in the agreement to City Centre One Associates, the plaintiff in the present action. Price/Prowswood appears in this action as a counterclaim defendant.

Each party claims that the other was unwilling to close the loan by the April 1, 1986 expiration date and thereby breached the agreement.[1] Plaintiff City Centre seeks a judgment declaring that the loan commitment agreement is voidable at its election. Defendant has filed its counterclaim seeking specific performance of the commitment agreement and damages for breach of the agreement.

Claiming that defendant possesses an adequate remedy at law, plaintiff has filed a Rule 56(c) motion for partial summary judgment on defendant's specific performance claim. This motion is now before the court.[2]

## DISCUSSION

■ The issue in this case is whether defendant, as a commercial lender, is entitled to a decree of specific performance requiring plaintiff to borrow the agreed amount. The inquiry focuses on whether defendant has an adequate remedy at law.[3] There are two circumstances in which the legal remedy might be inadequate. The first is where the benefit for which specific performance is sought is unique and the second is where relief in the form of damages is not capable of estimation. *First*

---

**1.** Defendant alleges that plaintiff was obliged, under the agreement, to meet certain leasing levels in the office complex as well as to deliver to defendant title reports, insurance policies, construction plans and other documents by April 1, 1986. Defendant further alleges that plaintiff deliberately failed to fulfill these obligations because of a substantial fall in interest rates between March 1984 and March 1986 which rendered the terms of the agreement less attractive to plaintiff.

Plaintiff, on the other hand, alleges that defendant failed to provide it with proposed drafts of the necessary closing documents by April 1, 1986. It claims that the first set of documents was not received until April 8, after defendant professed to extend the closing deadline unilaterally, in contravention of the agreement.

**2.** Plaintiff's previous motion to dismiss defendant's specific performance claim was denied by this court because the facts had not yet been adequately developed.

**3.** The loan commitment agreement provides that it is to be governed by the law of the state of New York. Under New York law, specific performance is proper if (1) there is a valid contract, (2) the movant has substantially performed under the contract and is willing and able to perform its remaining obligations, (3) the opposing party is able to perform its obligations, and (4) movant has no adequate remedy at law. *Niagra Mohawk Power Corp. v. Graver Tank & Mfr. Co.*, 470 F.Supp. 1308, 1325 (N.D.N.Y.1979).

*National State Bank of New Jersey v. Commonwealth Federal Savings & Loan,* 610 F.2d 164, 171 (3d Cir.1979). Neither of these conditions is present when a prospective lender sues for specific performance of an agreement to borrow money.

Since the typical borrower agrees to pay the lender nothing more than a sum of money, there is nothing at all unique about the lender's interest in the agreement. While it could be argued that the lender expected to have a security interest in real property and should therefore have the benefit of the common law presumption that land is inherently unique, the lender's interest in the land is, in reality, negligible. His primary interest is in being paid a sum of money. He hopes that he will never have to rely on his security interest in the land. A breach by a prospective borrower, therefore, does not deprive the lender of any interest in the land. It merely requires him to find another borrower from whom he can exact the same rate of return. If he cannot find such a borrower, the only harm which he suffers is pecuniary and fully compensable in damages.

Moreover, a lender's damages can be estimated with reasonable precision. The amount borrowed and the interest rate under the agreement are known with absolute certainty and the current interest rate at which the lender is forced to loan the money to someone else is ascertainable within a narrow range.

It is not surprising, therefore, that there appear to be no reported cases granting a lender specific performance of an agreement to borrow money. There are a few exceptional cases in which specific performance of such agreements has been granted to borrowers, but the rationale of these cases does not justify extending equitable relief to lenders. In cases where courts have granted specific performance to borrowers, they have reasoned that since contracts to buy and sell land are presumed to be specifically enforceable, a lender may be required to lend money where his failure to do so will result in a borrower's inability to acquire property that he would otherwise be able to acquire. Clearly, however, a borrower's breach of an agreement to borrow money does not affect a real property interest of a lender.

Of the eight reported cases granting a borrower specific performance, the uniqueness of the particular lender's position appears to have been influential in five. In *Jacobson v. First National Bank,* 129 N.J.Eq. 440, 20 A.2d 19 (1941), *aff'd* 130 N.J.Eq. 604, 23 A.2d 409 (1942), the court was impressed by the fact that the borrowers were faced with an uncompleted residence on which it was ostensibly impossible to borrow additional money elsewhere for its completion because of an excessive existing mortgage. *Id.* at 20. In *Camden v. South Jersey Port Commission,* 4 N.J. 357, 73 A.2d 55 (1950), the court noted that if the City were not required to lend the agreed sums to the Port Commission, construction of the pier and warehouse would have to be halted, irreparably injuring the rights of citizens who had relied upon the project. *Id.* at 63.

And in *Selective Builders, Inc. v. Hudson City Savings Bank,* 137 N.J.Super. 500, 349 A.2d 564 (1975), a builder sued a mortgage lender for breach of a loan commitment agreement. The construction project was 95% completed and the builder had sought alternative financing for almost a year without success. The construction mortgage lender threatened to foreclose on the property in which case the builder would lose its equity in the project into which it had poured substantial time and effort. The court also noted that the rights of third parties would be prejudiced if only damages were awarded. *Id.* at 569. Two other cases in which the borrower had already executed a note and mortgage and the lender had already begun disbursing the funds, thus rendering alternative financing nearly impossible, were *Cuna Mutual Insurance Society v. Dominguez,* 9 Ariz.App. 172, 450 P.2d 413 (1969) and *Southhampton Wholesale Food Terminal, Inc. v. Providence Produce Warehouse Co.,* 129 F.Supp 663 (D.Mass.1955).

Damages were inadequate to all of the borrowers in these cases since what they really needed was financing to complete

their projects. Since the defendant lenders already held security interests in the properties, the borrowers could not find other lenders and only specific performance would thus make them whole.

Difficulty in estimating damages was present in the remaining cases granting borrowers specific performance. In those cases, the borrowers had relied on the loan commitments to such an extent that no figure confidently could be placed on damages designed to compensate them.

In *Columbus Club v. Simons*, 110 Okla. 48, 236 P.12 (1925), the borrowers seeking specific performance of a loan to finance a new clubhouse had already sold their old clubhouse, purchased new land, reincorporated, hired an architect and entered into a construction contract. The difficulty of estimating the damages resulting from the borrower's completion of 95% of the project and from the lender's subsequent failure to lend the funds as promised was also influential in the court's decision to grant specific performance to the borrowers in *Selective Builders, supra,* 349 A.2d at 569.

And in both *Leben v. Nassau Savings & Loan Association,* 40 A.D.2d 830, 337 N.Y. S.2d 310 (2d Dep't.1972), *aff'd* 34 N.Y.2d 671, 312 N.E.2d 180, 356 N.Y.S.2d 46 (1974), and *Vandeventer v. Dale Construction Co.,* 271 Or. 691, 534 P.2d 183 (1975), *rev'd on other grounds,* 277 Or. 817, 562 P.2d 196 (1977), the borrowers had terminated their previous residential obligations, moved into a new house and spent substantial sums in connection with the purchase and repairs of the new house. The *Vandeventer* court emphasized that it would be extremely difficult, if not impossible, for a jury to estimate the damages that would be incurred if the borrowers were forced to move out of their new house for lack of adequate financing. These four cases illustrate that, unlike a lender's reliance on a loan commitment agreement, a borrower's non-monetary reliance can often be substantial.

Teachers insists that even if lenders should not be granted specific performance as a matter of course, equitable relief is appropriate in this case since the contingent interest provision in the present commitment agreement makes Teachers much more than just a lender.[4] Even in light of the contingent interest provision, however, Teachers' bargain is not unique and its damages are not incapable of estimation.

To support its claim that its profit-sharing position is unique, Teachers turns to the presumption that real estate is inherently unique and asserts that the City Centre property will generate revenues that are not reliably capable of replication. Teachers' position, however, is distinguishable from that of a buyer of property to whom specific performance is usually granted. First, Teachers was to hold no legal interest in the real property. Second, in deciding to loan money to City Centre, Teachers was not in the position of a purchaser of investment real estate who actively seeks out and even develops investment opportunities. There was nothing raised in the pleadings or at the hearing to indicate that Teachers did anything more than merely select the developers of the City Centre project from among a large field of loan applicants. The City Centre project may have appeared especially lucrative, but "lucrative" is not equivalent to "unique." By its own admission, Teachers is a conservative lender who inserted the contingent interest provision in the agreement in order to give itself additional security on a non-recourse loan. From Teachers' perspective, the City Centre property is not truly unique.

Teachers also argues that any damages designed to reflect the fruits of the contingent interest provision would be speculative. A jury is capable, however, of evaluating comparable transactions and deter-

---

**4.** The loan agreement provided that plaintiff was to pay annually to defendant, in addition to principle and interest payments based on a 12% annual interest rate over a 35 year term, "contingent interest" equal to 40% of the amount by which the gross receipts for the year from the City Centre project would exceed the Base Amount for that year (defined in the agreement to be the lesser of (i) the annualized fixed minimum rent roll projected to 95% occupancy or (ii) $2,886,335).

mining the present value of a future stream of income.

As a policy matter, it should be noted that granting equitable relief on the basis of a contingent interest provision would encourage all lenders to include such clauses in their agreements and would result in a spate of specific enforcement decrees in contravention of the common law reluctance to order specific performance.

Under Rule 56(c), summary judgment is proper where there exists no genuine issue as to any material fact and the relevant rule of law entitles the movant to a judgment. Having determined that a lender is not entitled to specific performance on an agreement to lend money, the court considers that plaintiff's motion for partial summary judgment on defendant's specific performance claim should be granted.