MARGUERITE PRATHER, EXECUTRIX OF THE ESTATE OF GRAHAM P. PRATHER, DECEASED, PLAINTIFF-APPELLANT v. AMERICAN MOTORISTS INSURANCE COMPANY AND AMERICAN MOTORISTS FIRE INSURANCE COMPANY, DEFENDANTS-RESPONDENTS.

Argued June 13, 1949—Decided June 30, 1949.

497

*Mr. LeRoy Vander Burgh (Mr. I. William Aronsohn,* on the brief; *Messrs. Vander Burgh & Aronsohn,* attorneys) argued the cause for the plaintiff-appellant.

*Mr. William H. D. Cox (Messrs. Cox & Walburg,* attorneys) argued the cause for the defendants-respondents.

The opinion of the court was delivered by

BURLING, J.   A judgment was entered in favor of the defendants-respondents in an action tried in the Bergen County Court, without a jury by consent of the parties.   The plaintiff appealed the judgment to the Appellate Division of the Superior Court.   We then certified the cause on our own motion, pursuant to *Rule* 1:5–1, to aid in the completion of the Appellate list before the summer recess.   The objective of this civil action is to recover from the defendants under alleged contracts of insurance damages less $50 sustained by

the appellant's decedent resulting from a collision of his automobile. As a result of a pre-trial conference issues were reduced to a construction of the alleged contracts of insurance as to coverage. Such construction is to ascertain the intention of the parties as expressed in the writing. No extrinsic evidence was offered.

On April 1, 1946, both defendants entered into a contract of insurance with Graham P. Prather, appellant's decedent. This contract related to a Lincoln automobile 1941 model sedan owned by Prather. Seven types of coverages and the premium charged therefor were referred to in the policy as follows:

| Coverages | Limits of Liability | Amer. Fire Premium | Amer. Premium |
|---|---|---|---|
| A—Bodily Injury Liability.... | $10,000 Each Person, $20,000 Each Accident | x x x x | $21.85 |
| B—Property Damage Liability | $5000 each accident | x x x x | 8.00 |
| C—Collision or upset......... | Actual Cash Value Less $ nil deductible | $ Nil | $ |
| D—Medical Payments (Named Insured included insert "included" or "excluded") | $500 each Person | x x x x | $ 4.00 |
| E—Comprehensive (Excluding Collision).............. | Actual Value | $6.00 | x x x x |
| F—Fire, Lightning & Transportation................. | Covered under E | $ Nil | x x x x |
| G—Theft (Broad Form)..... | Covered under E | $ Nil | x x x x |
| Total Premium............. | $39.85 divided as follows: | $6.00 | $33.85 |

There was no coverage for collision or upset. The contract bore on its face the statement: "Automobile Policies (Separate Insurance by Two Companies)." The contract became effective April 1, 1946, and expired April 1, 1947. The insurance agent who negotiated the contract with Prather was the agent for both companies.

On June 17, 1946, the respondent American Motorists Fire Insurance Company (hereinafter referred to as the Fire Company), in consideration of an additional premium of $10.50, issued an endorsement enlarging the coverage upon the automobile to include collision insurance with $50 deductible provision until October 1, 1946. So far as is pertinent to the questions under consideration, it provided:

"In consideration of an additional premium of $10.50 ot is hereby understood and agreed that $50. deductible collision is made part of this policy, effective June 17, 1946, until October 1st, 1946.

Coverage now is for:

| | |
|---|---|
| Bodily Injury | $10/20,000 |
| Property Damage | 5,000. |
| Med. Payments $500 limits | |
| Comprehensive fire and theft | |
| $50 ded. collision (until October 1, 1946)" | |

A printed statement that the endorsement should terminate with the policy appeared therein.

This endorsement was executed only by the Fire Company and not by the respondent American Motorists Insurance Company (hereinafter referred to as the Casualty Company.

On August 29, 1946, the Casualty Company executed an endorsement amending the contract by discontinuing insurance relating to the Lincoln automobile and affording insurance with respect to a Mercury automobile owned by Prather. In the tabulation of insurance afforded appeared the notation that coverage included collision or upset insurance with $50 deductible provision. In the printed form of the amendment appeared a statement that the endorsement should terminate with the policy. No additional premium was charged nor was any part of the premium returned. It is obvious that by error this endorsement was not executed by the Fire Company so on September 13, 1946, an endorsement similar to that of August 29, 1946, was executed by both companies, effective as of August 29, 1946. The same coverages appeared in this endorsement which, like that of August 29, 1946, contained a printed statement that the endorsement should terminate with the policy. In both of these endorsements appeared

columns for the insertion of annual premiums for each coverage and columns to indicate the additional or return premiums necessary. In both endorsements the amount of the annual premium for collision insurance was stated to be $46 and the columns for additional or return premiums therefor were left blank. On the endorsement of September 13, 1946, there appeared an item of $1.20 additional premium for comprehensive coverage, in which classification collision insurance was not included.

On October 16, 1946, the Mercury automobile was in a collision with another automobile and damaged in the amount of $1,397. Prather died on November 16, 1946, and his executrix made claim against both respondents in the amount of $1,347, representing the amount of the damage less the $50 deductible amount. The trial judge gave judgment in favor of both respondents; in favor of the Casualty Company holding that it was not a party to the collision insurance contract and in favor of the Fire Company because the contract in relation to such coverage had expired at the time the accident occurred.

In so far as the Casualty Company is concerned the question is presented whether the insertion of the collision coverage in the tabulation of coverages in the endorsement of August 29, 1946, is operative to create a coverage for collision insurance. We agree with the trial court that it did not. It clearly appears from the face of the endorsement that no premium charge of any kind was made by that company for that type of coverage.

With respect to the Fire Company the question resolves itself into a construction of the endorsements of June 17, 1946, and September 13, 1946. Both of these endorsements contained the printed notation that the endorsement would terminate with the policy, which expiration date was April 1, 1947. However, the endorsement of June 17, 1946, as set forth above, contained a typewritten termination date for collision coverage of October 1, 1946. The appellant contends that the omission in the endorsement of September 13, 1946, of the typewritten phrase containing the October 1,

1946, expiration date results in the expiration date for collision coverage being extended by the printed statement that the endorsement should terminate with the policy. This construction would result in a finding that the collision coverage was in force at the time of the loss on October 16, 1946. With this construction we do not concur.

Under the terms of the endorsement of June 17, 1946, it is clear that the collision coverage was to expire on October 1, 1946. After the endorsement of June 17, 1946, was executed the coverage for collision insurance was in force until October 1, 1946. Was it extended by the printed statement in the endorsement of September 13, 1946, to the expiration of the policy, April 1, 1947? We think not. In construing an insurance contract, as in the construction of other contracts, the elemental rule of construction is to determine the intention of the parties as demonstrated by the language employed, when read and considered as a whole. Effect, if possible, will be given to all parts of the instrument, and the construction which gives a reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable. *Caruso v. John Hancock, etc., Ins. Co.*, 136 *N. J. L.* 597, 598 (*E. & A.* 1947). The writing and print are to be construed so that both can stand if possible. 1 *Couch, loc. cit.* at *p.* 372; 29 *Am. Jur.*, "*Insurance*," § 161, *p.* 177.

It must be recalled that the endorsement of September 13, 1946, was intended by all parties to be applicable to two insurers and to contain separate coverages and obligations. The original policy contained separate coverages by two companies and these were combined in one instrument for convenience. Refer to the language of the original policy hereinabove quoted. The printed clause in the endorsement of September 13, 1946, terminating the endorsement with the policy applies only to the coverages in the original policy, which were, by its terms, to be effective until April 1, 1947, and not to the collision insurance, which was to expire on October 1, 1946, by the terms of its addition to the covered items as heretofore demonstrated. The endorsements are not

meaningless. This construction gives effect to all parts of the policy and endorsement.

▌▌ Further such a construction is consistent with the premiums actually charged in comparison with the annual premium. Although the amount of the premium cannot affect the plain terms of an insurance contract, it is a fact which may be taken into consideration in construing doubtful clauses in a policy. An insurer may fairly be assumed to intend to limit the risk to the price exacted. *Couch, Insurance,* 1945 *Cum. Supp. Vol.* 1, § 173-1, *p.* 159.

▌ The appellant invokes the rules that the decedent had the right to rely upon the plain meaning of the words contained in the endorsement, which was drawn by the agent of the respondents, and that the last endorsement in point of time is controlling. But the endorsements must be read in the light of the policy. *Crown Fabrics Corp. v. Northern Assur. Co., Ltd.,* 124 *N. J. L.* 27, 30 (*E. & A.* 1939). The construction applied herein is consistent with the rules invoked by the appellant.

The judgment of the Bergen County Court is affirmed.

CASE, J. (Dissenting.) The record is very thin. There was not a trial in the usual sense. The parties waived a jury trial and agreed that the court should decide the case upon certain facts stipulated at the pre-trial conference. The stipulated facts were that the defendant insurance companies entered into a contract of insurance on April 1, 1946; that the original contract was modified on three separate occasions by so-called endorsements; that on October 16, 1946, a Mercury automobile owned by Prather received damage from collision in the amount of $1,397; that Prather died November 16, 1946, and that Marguerite Prather was duly qualified as executrix and is the plaintiff; that plaintiff claims from the defendants the said amount of damage less $50; that the defendants contend that there was no coverage and that this was the only question in dispute except that there were certain customs in the insurance business which were evidential and upon which they desired testimony to be taken. The

original contract of insurance and the three endorsements were admitted exhibits. And that is the entire factual case. The suggested testimony was not taken.

The original policy needs little comment. Paragraph 4 contained a provision that the insurance was on a Lincoln sedan and was only with respect to such and so many of the coverages mentioned in the schedule incorporated within the paragraph as were indicated in the schedule by specific premium charge or charges. The items indicated were bodily injury liability, property damage liability, medical payments and "comprehensive." Collision insurance was excluded. The term was from April 1, 1946, to April 1, 1947. The endorsements consisted of separate sheets attached at different periods all subsequent to the issuing of the policy. The original policy is marked P1, and the amendatory endorsements are marked, respectively, P2, P3 and P4. P2 was dated June 17, 1946. It stated in typewriting that in consideration of an additional premium of $10.50 the insurance was extended to cover collision, with a fifty dollar deduction, until October 1, 1946, restated the former coverages, bore a clause mostly printed but with certain words and figures (herein italicized) in typewriting as follows: "This endorsement shall take effect at *12 a. m.*, on the *17* of *June, 1946* Standard Time at the address of the named assured as stated herein and shall terminate with the policy." It was signed by American Motorists Fire Insurance Company only.

Exhibit P3, dated August 29, 1946, restated the insured items, including collision, and stated—which Exhibit P2 did not—the annual premium on each item ($46 on the item of collision), discontinued the insurance on the Lincoln sedan and placed the insurance on a Mercury sedan. It contained no limitation of time particular to the item of collision but carried, in print, the statement, "This endorsement shall terminate with the policy." It was signed by the American Motorists Insurance Company only.

Exhibit P4 was dated September 13, 1946. It covered all of the items and also contained opposite the item "Comprehensive" something different from either the policy or the

earlier endorsements, and unexplained, namely, "Annual Premium 8.00, Additional Premium 1.20." It was signed by both insuring companies. The trial judge stated that in his judgment Exhibit P4 was executed by the two defendants because of the discovery of the fact that the preceding endorsement was not executed by the second company. That was an inference so frail as to be little more than a guess, particularly as the endorsement contained the other changes just mentioned. Nevertheless the respondents contend that it was a finding by the trial court and is binding here; and if we accept that argument, two things are emphasized; first, that the insurers indulged in ambiguity by adding, without explanation, two endorsements to accomplish the same purpose; and, second, that the insurers concededly making the third endorsement in order to correct the earlier one and to have its undertaking made perfect, nevertheless retained the provision that the collision coverage would terminate with the policy. While the latter provision was printed, it was printed not in fine type, but in type larger than that listing the insured items and was not in conflict with anything otherwise appearing on the endorsement either in printing, typewriting or handwriting.

Each endorsement differed from the other two endorsements in format, and all endorsements differed in some respects from the format of the policy. But P3 and P4 contain these vital provisions:

"The insurance afforded for the added automobile is only with respect to such and so many of the following coverages as are indicated by entry of specific annual premium charge or charges. * * * Collision or Upset; Limits of Liability, Actual Cash Value less $50.00; Annual Premiums Written, $46.00. * * * This endorsement shall terminate with the policy."

The reference to "the added automobile" is clearly to the Mercury which was substituted for the Lincoln as the subject of insurance. It will be noted that the condition which required that the insurance would be effective only as to the coverages which were indicated by entry of specific annual premium charge was met with respect to the item of collision

insurance by the entry of "Annual Premiums Written, $46.00." According to the conditions imposed by the policy endorsements collision was an insured item, and, according to the two final endorsements, that coverage extended to the expiration of the policy. The endorsements also contained spaces for the entry of "Additional Premiums," and these spaces were left blank; but of this it is to be said that the wording of the contract did not require such an entry to be made to give validity to the coverage, and that the absence of such an entry may not be taken as proof that the insured did not make, or did not intend to make if called upon, payment of an additional premium. There is no proof that under the various shifts made in this insurance contract there was an additional premium charge for the extended term, and even if there was an additional amount chargeable to the insured failure or default in the payment of a premium does not, in the absenec of a contractual provision, avoid or forfeit a policy of insurance. 45 *C. J. S., Insurance,* § 473(5).

The decision must, I think, turn upon the construction to be given to the printed provision contained in each of the last two of the attached papers, to the effect that the coverage of the endorsement shall terminate with the policy, as related to the typed provision in the first endorsement which embraced the words, absent thereafter, "until October 1, 1946." When Graham Prather saw the endorsement of August 29, 1946, or, later, the one of September 13, 1946, prepared and delivered to him by the companies, and read the provisions thereof clearly giving him coverage to the expiration date of the policy, was it incumbent upon him to review the earlier transactions and so determine whether or not the companies really meant what they later said? It seems to me not, under the circumstances. The rule that writing, by hand or machine, takes precedence over printed matter when the two are in conflict does not, in my opinion, apply when the written portion is superseded by print at a later date. The citations brought to our attention in support of the proposition that writing prevails over printed matter, *e. g., Excello Clothing Co. v. Marquette Ins. Co.,* 99 *N. J. L.* 154 (*E. & A.* 1923),

are upon a conflict that arises between parts of a contract contemporaneously incorporated therein. Let us assume for a moment that it really was the purpose of the insurers on August 29th and September 13th to make the coverage as to collision insurance terminate with the date of the policy precisely as stated in the endorsements; was it necessary, in order to give effect to that purpose, to cancel the printed matter and interline the same words in writing by hand or machine? I think not. And if, having an intention to give that extended coverage, they could properly have done as they did, by what reasoning, on the facts of the case, can it be said that what was done was not actually the intention? Particularly when the provision was restated in a later endorsement which was corrective to the end that the undertaking might be perfected? It is logical that when parties sit down and draw an instrument which contains printed matter and insert in typewriting a provision in contradiction of the printed portion the typewriting should prevail, because the change is deliberate and contemporaneous. The logic does not carry through to a supplement made at a later day which is consistent with itself and is clearly added to alter at least to some extent what has been done before. An instrument should, if possible, be so construed as to give effect to all its parts; but obviously these instruments are not being given effect in all their parts when a vital provision in the two later versions is erased to give effect to an inconsistent provision in the earlier. The disputed variance is not between the original contract and the endorsements, but between an endorsement and two later endorsements; but whether between the original contract and an endorsement or between an earlier and a later endorsement the sound rule seems to be that the later and final expression should control unless the intent of the parties is clearly shown to have been otherwise.

Death had made it impossible for the insured to clarify any of the doubts and ambiguities; not so with the defendant insurers. If, as is said, the absence from the later endorsements of the limitation of term and the retention there of the full policy period as the term of the collision insurance was

a mistake and contrary to the intent of the parties the insurers could have sought reformation. They did not seek it and did not get it. It was, of course, for the trial judge, and it is for us, to ascertain the intent of the parties, but he could not, nor may we, search outside the contract and the meager proofs.

Taking it all in all, I am of the opinion that the insurers have, by their acts and omissions, injected into the policy contract ambiguities that should weigh against them. Where something in a policy needs to be construed, the language not being the language of the insured, but the language of the insurer, a construction most advantageous to the insured, not doing violence to the wording, will be adopted. *Nickolopulos v. The Equitable Life Assurance Society,* 113 *N. J. L.* 450, 456 (*E. & A.* 1934).

This leads to the conclusion that the provisions in Exhibits 3 and 4 should be given effect, that the collision insurance was in force to the expiration date of the policy, that the plaintiff should prevail, and that, therefore, the judgment below should be reversed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—6.

*For reversal*—Justice CASE—1.