286 N.J. Super. 523 (1996)
670 A.2d 19
RICHARD GILLMAN, PLAINTIFF-APPELLANT,
v.
BALLY MANUFACTURING CORPORATION AND BALLY'S PARK PLACE, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 5, 1995.
Decided January 5, 1996.
*525 Before Judges MICHELS, BAIME and VILLANUEVA.
Kenneth D. McPherson, Jr. argued the cause for appellant (Waters, McPherson, McNeill, attorneys; Mr. McPherson and Frederic K. Becker, Roger B. Kaplan and Wilentz, Goldman & Spitzer, of counsel; Mr. McPherson, on the brief).
Steven S. Radin argued the cause for respondents (Sills Cummis Zuckerman Radin Tischman Epstein & Gross, attorneys; Mr. Radin and Ronald C. Rak, of counsel; James M. Hirschhorn and Paul F. Doda, on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiff Richard Gillman appeals from a summary judgment of the Chancery Division entered in favor of defendants Bally Manufacturing Corporation and Bally's Park Place, Inc. (hereinafter collectively referred to as "Bally") that dismissed his complaint seeking (1) damages based on both intentional and negligent misrepresentation with respect to Bally's administration of certain stock option rights granted to him as severance consideration and (2) equitable relief from Bally's contention that his option rights had been forfeited as a result of his attempt to exercise a portion of those rights sixteen days after the date Bally maintained the rights were last exercisable.
*526 Plaintiff, who served for many years as one of Bally's top executives, signed agreements (hereinafter collectively referred to as the Option Agreements) with Bally in July and October of 1991, which granted him options to buy one million shares of Bally stock and 300,000 shares of Bally Gaming International, Inc. stock. Under the Option Agreements, the options had a ten-year life as long as plaintiff remained employed by Bally. The Option Agreements further provided that if he retired, the options were only exercisable within one year after retirement and, if he was terminated for other reasons, the options were only exercisable within three months. On January 8, 1993, plaintiff retired from Bally under a Retirement and Separation Agreement that vested his unmatured stock options and which provided that he could exercise the options according to the terms of the respective Option Agreements. However, plaintiff failed to exercise approximately forty percent of the Bally options and all of the Bally Gaming International, Inc. options within one year after his retirement as required under the Option Agreements. When he attempted to exercise the options on January 24, 1994, sixteen days after the one-year period had elapsed, Bally refused to permit the purchase of the stock.
Plaintiff instituted this action seeking to reinstate the options he lost through his inaction, raising essentially three points. First, plaintiff claimed that under his contract with Bally he was entitled to exercise the options within ten years after their issuance or until 2001, rather than one year after his retirement. Second, he claimed that if he was subject to the one-year deadline, Bally, through fraudulent or negligent statements, misled him into believing that he had ten years to exercise the options. Finally, plaintiff claimed that the expiration of the options was a forfeiture and that he should be relieved from it on the basis that he made an honest mistake regarding the expiration date of the options.
Following cross-motions for summary judgment, Judge Margolis in the Chancery Division found that plaintiff had retired and that the Option Agreements with Bally clearly provided that the *527 options would lapse one year after his retirement. The trial court further found that Bally made no false representations or fraudulent or negligent statements concerning the option dates. Finally, with respect to the forfeiture claim, the trial court held that a sophisticated businessman, such as plaintiff who was represented by experienced counsel, should have known the expiration date of the options and should not be relieved from the consequences of his inaction. The trial court thereupon entered summary judgment in favor of Bally. Plaintiff appealed.
Plaintiff seeks a reversal of the summary judgment, contending that (1) his right to receive cash under vested options was fully supported by prior consideration to Bally and any lateness in the exercise of the options would be an immaterial breach by him which will not sustain forfeiture; (2) even in cases outside the employment context involving "time of the essence" options, relief from forfeiture should be granted in instances of non-prejudicial lateness due to reasonable mistake; (3) in construing his severance contract as subjecting his options to a one-year exercise period, the trial court improperly (a) rendered terms of the agreement superfluous; (b) excluded drafting history evidence to the contrary; and (c) resolved factual issues of Bally's state of mind on the basis of affidavits; and (4) in dismissing his claims for intentional and negligent misrepresentation and for "bad faith" breach of contract, the trial court improperly resolved issues of Bally's state of mind based on affidavits.
We are satisfied from our review of the record and the arguments presented that the trial court properly granted summary judgment in favor of Bally and that all issues of law raised are clearly without merit. R. 2:11-3(e)(1)(E). We are convinced that there does not exist a genuine issue of material fact which precluded the granting of summary judgment in favor of Bally whether the matter is viewed traditionally under Judson v. Peoples Bank & Trust Company of Westfield, 17 N.J. 67, 110 A.2d 24 (1954), or under the standard more recently announced in Brill v. *528 Guardian Life Insurance Company of America, 142 N.J. 520, 666 A.2d 146 (1995).
Additionally, we emphasize that the trial court's exercise of discretion in denying plaintiff's forfeiture claim may be disturbed only if it is "so wholly insupportable as to result in a denial of justice." Goodyear Tire and Rubber Co. v. Kin Properties, Inc., 276 N.J. Super. 96, 106, 647 A.2d 478 (App.Div.), certif. denied, 139 N.J. 290, 654 A.2d 470 (1994) (quoting Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484, 323 A.2d 495 (1974)). "[I]n reviewing the exercise of discretion it is not the appellate function to decide whether the trial court took the wisest course, or even the better course, since to do so would merely be to substitute our judgment for that of the lower court. The question is only whether the trial judge pursues a manifestly unjust course." Gittleman v. Central Jersey Bank & Trust Co., 103 N.J. Super. 175, 179, 246 A.2d 757 (App.Div. 1967), rev'd on other grounds, 52 N.J. 503, 246 A.2d 713 (1968).
"[E]quity's jurisdiction in relieving against a forfeiture is to be exercised with caution lest it be extended to the point of ignoring legal rights." Dunkin' Donuts of Am. v. Middletown Donut Corp., 100 N.J. 166, 182, 495 A.2d 66 (1985); Brick Plaza, Inc. v. Humble Oil & Refining Co., 218 N.J. Super. 101, 104, 526 A.2d 1139 (App.Div. 1987). When a contract expressly provides for expiration of a party's rights at a time certain, "a court of equity will not interfere to substitute a different and more liberal agreement" than that which existed between the parties. Fox v. Haddon Tp., 137 N.J. Eq. 394, 398, 45 A.2d 193 (Ch. 1945). "An express contract, making time a particular of it, cannot be ignored by a court of equity." Gorrie v. Winters, 214 N.J. Super. 103, 107, 518 A.2d 515 (App.Div. 1986) (quoting Collins v. Delaney Co., 71 N.J. Eq. 320, 322, 64 A. 107 (Ch. 1906)), certif. denied, 107 N.J. 114, 526 A.2d 184 (1987). "Although a broad forfeiture clause in an employment or [stock] option contract may work harsh results, a court must act only upon the language of the written contract...." Fredericks v. Georgia-Pacific Corp., 331 F. Supp. 422, 427 (E.D.Pa. 1971), dismissed, 474 F.2d 1338 (3d Cir.1972).
*529 In an option contract, "time is of the essence." 1A Corbin on Contracts, § 273 (1963 & Supp. 1994); Brick Plaza, supra, 218 N.J. Super. at 104, 526 A.2d 1139; Sosanie v. Pernetti Holding Corp., 115 N.J. Super. 409, 413, 279 A.2d 904 (Ch. Div. 1971). Generally, expiration provisions in stock option agreements are strictly enforced. Courts reject the inevitable breach of contract and forfeiture claims that employees, former employees and other stock option holders press when they fail to timely exercise their options. See, e.g., Bernard v. IMI Systems, Inc., 131 N.J. 91, 106-07, 618 A.2d 338 (1993) ("[I]t is not uncommon for an employee's right to exercise a stock option to terminate upon such employee's termination from employment."); Mullen v. New Jersey Steel Corp., 733 F. Supp. 1534, 1554 (D.N.J. 1990) (employee's failure to purchase stock options before termination led to loss of the options); Fredericks, supra, 331 F. Supp. at 428 ("having left the employment of Georgia-Pacific prior to exercising the remaining options, Fredericks' right to exercise the options terminated.").
For example, in Mullen, supra, 733 F. Supp. at 1552-53, the Federal District Court held that even if a vice-president believed that his stock options did not expire when his employment terminated, that belief would have been unreasonable because it was contrary to the option agreement's express provisions and no one at the company had told him that he would still be able to exercise them. Similarly, in Fredericks, supra, 331 F. Supp. at 424, an executive who resigned by agreement, later argued that he should be permitted to exercise his remaining options post-termination because he had been driven out of his position before he could exercise them. The Federal District Court strictly enforced a provision that the executive's options expired when his employment terminated, holding that the option agreement clearly provided that it would expire on termination, which must have been clear to the executive as well, since he "was a businessman and the president of a large corporation[.]" Id. at 427.
*530 In Brick Plaza, supra, we strictly enforced the expiration date of an option to purchase land against an experienced businessman even though doing so meant the plaintiff lost the value of significant improvements to the land. The plaintiff in Brick Plaza asked to be relieved from the option's expiration because its president's failure to timely exercise the option was claimed to be an "honest mistake." We rejected the argument, finding that plaintiff's president acted unreasonably:
Plaintiff's [president's] reliance upon an unsigned preliminary draft of the lease agreement when the original of the executed agreement was in the possession of its own attorney amounts, in our view, to a course of "positive neglect." "Equity does not ordinarily aid one whose indifference was the sole cause of the injury of which he now complains." [Brick Plaza, supra, 218 N.J. Super. at 105, 526 A.2d 1139 (citations omitted).]
Despite his out-of-pocket losses, we declined to relieve plaintiff from the consequences of its president's mistake, stating that business people are entitled to stability in their business arrangements:
It may be that a court of equity could provide a wiser and more beneficent result than that dictated by the agreement before us. But this is not what the parties bargained for. Business people do not enter into agreements to provide grist for the work of the courts. They do so to bring order and predictability to their affairs.... Parties should not be obliged to speculate about how the conscience of a court may define their rights and obligations ... [O]ur interest in preserving the stability of business arrangements outweighs whatever equitable purpose may be served by relieving plaintiff from the consequences of its own neglect. [Ibid.]
Here, relying on Brick Plaza, supra, the trial court properly rejected plaintiff's "mistake" argument, stating:
Gillman was represented by competent counsel at all relevant times  he was a sophisticated businessman upon whose behalf a detailed agreement was negotiated.... [I]f Gillman was not aware of the option exercise date, his counsel was, or should have been. This Court cannot choose to ignore bargained-for legal rights under these circumstances under the guise of a forfeiture.
Plaintiff was one of two top executives of a major corporation. He was advised by experienced counsel in a multi-million dollar transaction. Like the plaintiffs in Brick Plaza, supra, Fredericks, supra and Mullen, supra, plaintiff and his attorneys should have looked to the executed agreements that governed his rights, not to earlier unexecuted drafts of those agreements and *531 other documents that do not purport to definitively set forth his post-retirement stock option rights. The trial court properly enforced the express, bargained-for terms of his Option Agreements and Retirement and Separation Agreement, and refused to grant plaintiff equitable relief from the consequences of his and his counsel's neglect. See Brick Plaza, supra, 218 N.J. Super. at 105, 526 A.2d 1139.
The Option Agreements specifically provided that if plaintiff died, became disabled, or retired from Bally, his options must be exercised within one year of his departure instead of the initial ten-year term of the options. Plaintiff's argument that the "late exercise of his options was the product of reasonable mistake on his part," and that the "trial court failed to appreciate the significance of this `mistake' evidence" is not compelling. Plaintiff was an experienced executive, represented by competent counsel. It was his duty to keep abreast of his stock options and their respective expiration dates. His failure to timely exercise them may not be excused based on claims of harmless mistake.
While plaintiff concedes that generally time is of the essence in stock option contracts, he suggests that "time of the essence" restrictions do not apply to his stock options because they were part of an employee severance package and he did not pay Bally for the shares. He characterizes his options as "earned right[s]" from his former employment with Bally that are "supported by prior consideration[.]" This attempt to recharacterize these options is unpersuasive. The requirement that plaintiff have exercised his options by January 8, 1994 remains unchanged. Options are ordinarily granted for "prior consideration." An option contract is "a continuing offer supported by a sufficient consideration, a promise upon an executed legal consideration, and so irrevocable for the time of its continuance." Borough of West Caldwell v. Borough of Caldwell, 26 N.J. 9, 26, 138 A.2d 402 (1958). Whether a stock option is granted for money, for past services, as an incentive for future services, or for no consideration at all, the option holder must exercise the option within its term or *532 he loses his right to do so. Furthermore, once plaintiff ceased working for Bally, it would be foolhardy to believe that plaintiff should be entitled to the options as "earned rights." Once plaintiff retired, the options provided him no incentive to aid the business efforts of Bally, and, therefore, any extension of the life of the options served no benefit to Bally.
Plaintiff also stresses the supposed difference between his "cashless exercise" of the stock options and those stock options where a cash price must be tendered at the time of exercise. However, whether the exercise of an employee stock option is for cash or "cashless," the principle remains the same. The employee pays the option price and realizes a profit because the market price is higher than the option price. The only difference is that in a "cash exercise," the employee tenders money for the option price, while in a "cashless exercise" some of the optioned stock is used to pay the option price. In both cases, the employee obtains a benefit only because the present value of the stock is greater than the option price.
Whether given as a reward or as an incentive for loyal service, an employee's ability to exercise stock options is often subjected to time limitations. See Bernard, supra, 131 N.J. at 108, 618 A.2d 338; Mullen, supra, 733 F. Supp. at 1553; Fredericks, supra, 331 F. Supp. at 428. The fact that plaintiff could have obtained shares under his options by tendering the exercise price in stock rather than in cash makes no difference. Like any other employee, plaintiff had to exercise his options on time and according to their express terms, in order to properly purchase them under the Option Agreements.
Bally has a significant business interest in maintaining the integrity of the expiration dates of stock options it issues, regardless of how they may be exercised. By issuing stock options, a company potentially dilutes the value of existing shares. As a publicly traded company, Bally has a duty to its shareholders to put clear limitations on that potential dilution. Plaintiff's Option Agreements provided for exercise by either cash or "cashless" *533 payment. Either way, Bally, through the Option Agreements, provided expiration dates within which departing employees could exercise their stock options, in order to strike a balance between the grant of compensation and performance incentives on the one hand, and the protection of existing shareholders' interests against dilution on the other.
"[S]tock options are an incentive to `stimulate the efforts of key employees and to strengthen the desire of such employees to remain in the employment of the Corporation.' Such incentives do not apply to [retired] employees." Bernard, supra, 131 N.J. at 107, 618 A.2d 338. Once plaintiff retired, Bally received no benefit from his continuing ownership of his stock options, yet he still had one year to exercise them. Plaintiff's neglect in failing to purchase his options within the one-year term, even if through mistake, resulted in his loss of the options. Consequently, plaintiff may not exercise his options outside the one-year term permitted under the Option Agreements.
Accordingly, the summary judgment under review is affirmed substantially for the reasons expressed by Judge Margolis in his thorough and thoughtful letter opinion of August 23, 1994.