288 N.J. Super. 313 (1996)
672 A.2d 257
STEVEN HANNIGAN, PLAINTIFF-APPELLANT,
v.
THE TOWNSHIP OF OLD BRIDGE, A MUNICIPAL CORPORATION OF NEW JERSEY AND BARBARA CANNON, IN HER OFFICIAL CAPACITY AS MAYOR OF THE TOWNSHIP OF OLD BRIDGE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 2, 1996.
Decided March 14, 1996.
*314 Before Judges KING, HUMPHREYS and BILDER.
Barry H. Evenchick argued the cause for appellant (Hellring, Lindeman, Goldstein & Siegal, attorneys).
William S. Ruggierio argued the cause for respondents.
The opinion of the court was delivered by KING, P.J.A.D.
This is an appeal from an order dismissing a suit for money damages brought by plaintiff, Steven Hannigan, for an alleged breach of a settlement agreement reached in an earlier action with defendants, the Township of Old Bridge and its mayor, Barbara Cannon. The Law Division judge ruled that plaintiff's sole remedy was to enforce the stipulation of settlement in the prior action. While enforcement of the settlement in the prior action may often be an appropriate remedy, in this particular circumstance we conclude that plaintiff is entitled to bring an independent action for breach of contract, with the customary panoply of discovery and right to jury trial. We reverse.

I.
Plaintiff, born on February 9, 1956 and now age 40, applied to become a police officer in Old Bridge soon after earning an associate's degree in police science in 1985. Even though he had *315 passed the necessary written and physical tests to qualify for employment as an Old Bridge police officer, the then-mayor refused to appoint him. As a result, he brought an action in lieu of prerogative writ against Old Bridge to compel his appointment to its police department, contending that the mayor's failure to appoint him was arbitrary and unreasonable. Hannigan v. Township of Old Bridge, Docket No. L-77349-85. This lawsuit was amicably resolved when the parties entered into a "memorandum of understanding" on May 5, 1987. This memorandum, signed on behalf of Old Bridge by its then-mayor, Russell Azzarello, stated that at such time in the future when Old Bridge hired additional police officers, following exhaustion of an August 9, 1985 list of twenty-six candidates, plaintiff's application would be given "first consideration." In return, plaintiff voluntarily dismissed his lawsuit.
In April 1990, plaintiff learned that Old Bridge would be filling vacancies in its police department in the near future. His attorney advised Old Bridge's municipal attorney that any failure to consider plaintiff for employment would be regarded as a direct violation of the memorandum of understanding.
By letter of July 31, 1991 Old Bridge's municipal attorney informed plaintiff's counsel that the recent appointees to Old Bridge's police department were experienced police officers from other jurisdictions. The letter enclosed a copy of an announcement for a test scheduled on August 22, 1991 the purpose of which was to develop a list for new police officer candidates. The letter advised that plaintiff was not required to take the test and that when appointments were made after the test, plaintiff would be "the first individual considered for hire as a new inexperienced police officer."
By letter of December 27, 1991 Old Bridge's then-mayor, Arthur Haney, advised plaintiff that the testing process had been completed. He stated that all appointments would be based upon the rank order contained on a list attached to his letter. Plaintiff's name appeared on this list but we do not know from the *316 record his position on the list, which is not in the appendix. The letter advised that "[t]he only exception to this process is the appointment of one individual that surrounds the settlement of litigation from the previous police examination." The letter also stated that the first ten names on the list, along with the individual whose appointment was based upon the previous testing, were forwarded to the Chief of Police and to the Director of Public Safety for necessary background checks. Upon completion of this procedure, the incoming mayor, Barbara Cannon, would make the appointments to the police department. The letter congratulated plaintiff on having successfully completed the testing process and ended with the "hope that someday you will be serving as a proud member of the Old Bridge Police Department."
Plaintiff was not appointed to the Old Bridge Police Department. On February 7, 1992 plaintiff commenced another action in lieu of prerogative writ for injunctive relief and for damages against the present defendants, claiming that they had breached the memorandum of understanding, Hannigan v. Township of Old Bridge, Docket No. L-1486-92. This suit was also amicably resolved when the parties signed a "stipulation of settlement and dismissal with prejudice." According to this stipulation, Old Bridge anticipated the imminent opening of five positions for officers in its police department which it intended to fill with individuals who did not have prior police experience. The stipulation provided that Old Bridge would interview plaintiff and the top nine candidates for the positions in October 1993 and that those candidates, including plaintiff, would undergo the same physical and mental examinations and background checks. The stipulation also stated that individuals would be hired in December based upon this process. In addition, the stipulation provided: "If [plaintiff] is on a par with any other individual as determined by Mayor Barbara Cannon, he will, in consideration of the 1987 Memorandum of Understanding, be deemed the candidate superior to said individual and any lower rated candidates." The stipulation also imposed on plaintiff the responsibility to obtain any necessary waivers of current pension and statutory age requirements *317 by December 15, 1993 and made any decision to hire him expressly contingent upon his satisfaction of this requirement. Plaintiff was beyond age thirty-five by that time. Old Bridge was required to act "in complete good faith in the above process." The stipulation provided that this agreement would fully resolve "all issues between the parties arising from past or present litigation including without limitation any obligations arising out of the 1987 Memorandum of Understanding and the December 27, 1991 letter of Mayor Arthur Haney."
By letter dated December 13, 1993 Old Bridge's outside counsel advised plaintiff's attorney that it was imperative to plaintiff's employment prospects that "you obtain a formal indication that his age is not a bar." He stated that Old Bridge would accept a letter to that effect from either the Attorney General's Office or the Division of Pensions.
By letter of December 15, 1993 plaintiff's attorney forwarded to Old Bridge's outside counsel a letter from Thomas Bryan, the Executive Assistant for the Division of Pensions, in which Bryan explained that the entry-age limit of thirty-five for enrollment in the Police and Firemen's Retirement System and a comparable hiring-age limit for municipal police officers under the local government law were currently enforceable under a temporary exception to the Federal Age Discrimination and Employment Act, due to expire on December 31, 1993. Bryan opined that with the expiration on December 31, 1993 both of these age limits would become unenforceable. However, Bryan stated that he would have to receive official advice from the Attorney General's Office to this effect and that the Division of Pensions could not grant a waiver of these age limits.
By letter of December 21, 1993 William Ruggierio, Director of Old Bridge's Department of Law, informed Old Bridge's outside counsel that Mayor Cannon had made her determination concerning the hiring of additional police officers and that plaintiff had not been selected. According to Ruggierio, Cannon "did not find [plaintiff] to be equal or better to the candidates which she *318 selected." Ruggierio further noted that had Cannon decided to hire plaintiff, "the apparent inability of [plaintiff] to satisfactorily resolve ... [the age waiver] issue by 15 December 1993 would have become an important and probably dispositive factor."
By letter of January 10, 1994 plaintiff's attorney advised Old Bridge's outside counsel that Old Bridge had breached the stipulation of settlement by failing to hire plaintiff as a police officer. Plaintiff's attorney maintained that Old Bridge had not acted in good faith as shown by the fact that it had never scheduled plaintiff for physical or mental examinations, as required by the stipulation. He also asserted that Old Bridge had breached the stipulation by hiring two police officers who had previously been employed by other law enforcement agencies. Plaintiff's attorney also complained that Cannon had not given any reasons for her finding that plaintiff was not equal to or better than the candidates she selected. Finally, he asserted that plaintiff had satisfactorily resolved the age limitation issue by December 15, 1993 as required by the stipulation.
By letter of January 31, 1994 the Director of Old Bridge's Department of Law informed plaintiff's counsel that although Mayor Cannon indeed had considered plaintiff's application in good faith, she did not hire him because he was not on par with the five individuals who were selected. He admitted that two of the individuals selected had previous police experience but claimed that Cannon had never committed herself to eliminating candidates from the list because they had prior police experience. He further stated that as of December 15, 1993 plaintiff was prohibited by statute from being hired due to the age-limitation provision and that plaintiff's counsel had not succeeded in eliminating this barrier.
On August 2, 1994 plaintiff filed this complaint in the Superior Court, Law Division against defendants, seeking compensatory and punitive damages, attorney's fees, interest and costs of suit for breach of the settlement agreement. Defendants filed a motion to dismiss the complaint. At oral argument on the motion, defense *319 counsel argued that the complaint should be dismissed and that plaintiff must instead bring a motion to enforce the stipulation of settlement. Plaintiff's attorney disagreed, arguing that defendants' actions constituted a breach of contract for which plaintiff had the independent right to sue for damages. He asserted that plaintiff was no longer seeking an appointment as a police officer, apparently because of plaintiff's age, but wanted money damages.
The judge granted defendants' motion to dismiss the complaint. He ruled that plaintiff's remedy was to move to enforce the stipulation of settlement. The judge said that plaintiff gave up his right to damages when he chose to enter into the stipulation of settlement: "Your remedy is to seek enforcement of that settlement and not to say I don't want it any more, now I want damages." On November 7, 1994 the judge entered an order dismissing the complaint without prejudice and directed plaintiff to seek relief by enforcing the stipulation of settlement entered in Docket No. L-1486-92 by way of a motion within that lawsuit.

II.
The sole issue raised on appeal is whether plaintiff has the right to sue for damages for breach of contract rather than moving for enforcement of the stipulation of settlement. A settlement agreement between parties to a lawsuit is a contract. Nolan v. Lee Ho, 120 N.J. 465, 471, 577 A.2d 143 (1990). "An agreement to settle a lawsuit is a contract which, like all other contracts, may be freely entered into and which a court, absent a demonstration of `fraud or other compelling circumstances,' should honor and enforce as it does other contracts." Pascarella v. Bruck, 190 N.J. Super. 118, 124-25, 462 A.2d 186 (App.Div.), certif. denied, 94 N.J. 600, 468 A.2d 233 (1983).
In this case, because of the passage of time, specific performance is an unavailable remedy. Plaintiff's current age of 40 realistically forecloses his hiring as a policeman. A promisee having a right to specific performance is not barred from seeking damages for breach of contract as an alternative. See Donovan v. *320 Bachstadt, 91 N.J. 434, 442, 453 A.2d 160 (1982); Selective Builders v. Hudson City Savings Bank, 137 N.J. Super. 500, 510, 349 A.2d 564 (Ch.Div. 1975); see also Deerhurst Estates v. Meadow Homes Inc., 64 N.J. Super. 134 146, 165 A.2d 543 (App.Div. 1960), certif. denied, 34 N.J. 66, 167 A.2d 55 (1961); E. Allan Farnsworth, Contracts § 12.5 at 166 (1990). Even though money damages may facially seem rather speculative, plaintiff should be given the opportunity to attempt to prove such damages under the usual standards. See Printing Mart v. Sharp Electronics, 116 N.J. 739, 746, 563 A.2d 31 (1989). Otherwise, there would be no remedy for the breach.
We conclude that plaintiff may pursue this original action for damages, subject, of course, to all appropriate defenses and to the defendants' claims that damages are too speculative for measurement. For instance, one such defense is the assertion that plaintiff breached the agreement by not securing an age waiver. Plaintiff is entitled to full discovery rights and to a trial by a jury, just as in any other contract action.
We do not disagree with Judge Conford's observations in Jannarone v. W.T. Co., 65 N.J. Super. 472, 476-77, 168 A.2d 72 (App.Div.), certif. denied sub nom. Jannarone v. Calamoneri, 35 N.J. 61, 171 A.2d 147 (1961), that:
... There is no good reason why an executory agreement between the parties, fairly arrived at, to settle pending litigation, should not be enforced in the cause, subject to the cause, subject to the discretion of the court. See Clarkson v. Kelly, 49 N.J. Super. 10 [138 A.2d 747] (App.Div. 1958). The considerations arising out of ancient differences between law and equity jurisdiction which formerly made resort to Chancery the appropriate remedy for enforcing an executory settlement of a law action, see Trenton Street Ry. Co. v. Lawlor, 74 N.J. Eq. 828, 71 A. 234 (E.& A. 1908); cf. De Caro v. De Caro, 13 N.J. 36 [97 A.2d 658] (1953), should not under our present unified practice prevent enforcement of an executory settlement through judgment in the cause after summary hearing, at least when the dispute as to the fact and terms of settlement is simple and easily resolved, as here, cf. Kupper v. Barger, 33 N.J. Super. 491 [111 A.2d 73] (App.Div. 1955), and no real considerations as to the fairness and equity of the settlement are made to appear.
In the case before us, however, specific enforcement of the contract is no longer plausible because of plaintiff's age and perhaps other considerations of public policy. Nor is this a dispute "as to *321 the fact and terms of settlement [which] is simple and easily resolved, ..." Id. at 477, 168 A.2d 72. We have a claim for breach of contract, not a misunderstanding as to contract terms or a grudging lack of cooperation in fulfilling the agreement.
We agree with Judge Conford that in many cases of a claimed breach of executory settlement agreements, resort to an enforcement order through a summary proceeding in the "settled" action is more appropriate. See R. 1:10-3 (relief to litigant); R. 4:67 (summary actions and proceedings). Of course, the latter rule is usually reserved for situations where "the matter may be completely disposed of on the existing record or on minimal testimony in open court." R. 4:67-2(b). Such is obviously not the case before us.
Reversed and remanded for reinstatement of plaintiff's complaint.