**LINAN–FAYE CONSTRUCTION CO., INC., Plaintiff,**

v.

**HOUSING AUTHORITY OF THE CITY OF CAMDEN and Ayirebi Asante, Defendants.**

**No. CIV. A. 97–3558 JEI.**

United States District Court, D. New Jersey.

March 4, 1998.

---

Lundy, Flitter, Beldecos & Berger, P.A. by Cary L. Flitter, Cherry, NJ, for Plaintiff.

Pepper Hamilton, LLP by Nicholas M. Kouletsis, Cherry Hill, NJ, for Defendants.

## OPINION

IRENAS, District Judge.

This matter comes before this Court on cross-motions for summary judgment. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. For the reasons stated below, this Court will enter partial summary judgment in favor of plaintiff Linan–Faye Construction Co., Inc..

## I. BACKGROUND

The material facts in this case are not in dispute. After a jury trial, plaintiff Linan–Faye Construction Co., Inc. ("plaintiff") obtained an amended judgment ("the judgment") against the Housing Authority of the

City of Camden ("HACC") in the amount of $1,390,488. After HACC filed a notice of appeal with the Third Circuit Court of Appeals concerning the judgment, the parties reached a settlement agreement. Pursuant to this agreement, HACC's counsel prepared, and plaintiff signed, a document titled "General Release" ("the Release") in which plaintiff states that it releases HACC from "any and all claims pertaining to or arising from [Linan–Faye's] contract with ["HACC"] including those claims set forth in the suit captioned *LINAN–FAYE CONSTRUCTION CO., INC. V. HOUSING AUTHORITY OF THE CITY OF CAMDEN*, Docket No. 90–4651" and agrees to accept a payment of $1,250,000 in lieu of the judgment. The Release provides that the $1,250,000 is to be paid in four installments. The first payment is to be $450,000, due on or before May 20, 1997. Additional payments of $350,000, $300,000 and $150,000 are to be paid on November 1, 1997, November 1, 1998, and November 1, 1999, respectively. The Release further provides: "TIME IS OF THE ESSENCE FOR THESE DATES." Finally, it states: "[Linan–Faye] agree[s] that [it] will not seek anything further including any other payment from [HACC][.] This release is conditioned upon the receipt of said payments and in the event of failure of same, [Linan–Faye] retain[s] the right to enforce payment of same."

Plaintiff sent letters to counsel for HACC on March 13, 1997; April 2, 1997; April 11, 1997, May 1, 1997; May 8, 1997; and May 20, 1997, inquiring about the status of the first payment due on or before May 20, 1997. In the May 8 letter, plaintiff warned that it would seek interest in the event the payment was late. On May 20, 1997, plaintiff's counsel wrote: "My client's position is that if the payments are not made in full and on time, then the agreement will have been breached and Linan–Faye is entitled to the full amount of the judgment." (Complaint, Ex. H). On May 23, 1997, plaintiff's counsel stated his client's view that the late payment rendered the judgment due and payable in full, and advised that if payment was not received by May 28, 1997, plaintiff reserved the right to commence execution proceedings on the judgment. (Complaint, Ex. I). On June 6, 1997, still not having received the first pay-

ment, plaintiff's counsel advised HACC that HACC was in "plain breach" and that plaintiff would "proceed with the remedies available to them at law." (Complaint, Ex. J). On June 16, 1997, plaintiff's counsel acknowledged receipt of the $450,000 payment from HACC in a letter to HACC's counsel, and wrote further:

> As I indicated to you in our meeting, this check is being accepted on account of the debt, and without prejudice to my client's position that the Release Agreement has been breached by HACC and that the full amount of the judgment is now due.
>
> The check shall be deposited, but without prejudice, reserving all rights.

(Complaint, Ex. K).

On July 23, 1997, plaintiff instituted the instant suit against HACC and Ayirebi Asante, Acting Executive Director of HACC ("defendants"), alleging that HACC materially breached the settlement agreement when it failed to make its first payment by May 20, 1997, as required by the Release, and seeking a writ of mandamus from this Court directing defendants to pay and satisfy the original judgment with interest, less credit for sums paid and for other relief. On November 1, 1997, HACC paid the second required installment. Plaintiff's counsel wrote to HACC's counsel to acknowledge receipt. He stated further:

> As I previously indicated to you, and as I advised in acceptance of the first payment, this check is being accepted on account of the debt, and without prejudice to Linan–Faye's contention that the Release Agreement has been breached by HACC and that the full amount of the judgment is now due (less credit for sums received).
>
> The check shall be deposited, but without prejudice, reserving all rights.

(Plaintiff's Brief in Support of Motion for Partial Summary Judgment, Ex. E).

Now before this Court are the parties' cross-motions for summary judgment concerning whether plaintiff now is entitled to void the Release and to seek—via writ of mandamus—satisfaction of the judgment less credit for sums received.

## II. SUMMARY JUDGMENT STANDARD

Under Fed.R.Civ.P. 56(c), a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The non-moving party may not simply rest on its pleadings to oppose a summary judgment motion but must affirmatively come forward with admissible evidence establishing a genuine issue of fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. American Telephone & Telegraph Long Lines,* 794 F.2d 860, 864 (3d Cir.1986). The role of the court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. Where the moving party has carried its initial burden of demonstrating the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Idus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A genuine issue for trial does not exist "unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons. Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir.1987)(Becker, J., concurring).

## III. DISCUSSION

■ The parties do not dispute that New Jersey law applies in this diversity action. Under New Jersey law, a settlement agreement is a contract and normal contract rules apply. *Nolan v. Lee Ho,* 120 N.J. 465, 577 A.2d 143 (1990); *Hannigan v. Township of Old Bridge,* 288 N.J.Super. 313, 672 A.2d 257, 260 (1996).

### A. Material Breach

■ A breach is material if it goes to the "essence" of the contract. *Ross Sys. v. Linden Dari–Delite, Inc.,* 35 N.J. 329, 173 A.2d 258, 264 (1961). The Release provides a payment schedule. It also provides: "This release is conditioned upon the receipt of said payments and in the event of failure of same, [Linan–Faye] retain[s] the right to enforce payment of same" ("the enforcement provision"). The phrase "said payments" must be construed as referring to the payments listed in the payment schedule and incorporates the dates payable. Thus, the Release is conditioned, for example, on receipt of $450,000 on or before May 20, 1997, not on the mere receipt of $450,000.

Simply stating that a release is conditioned on timely payment is not the same thing as providing that a delinquent payment shall constitute a material breach allowing the releasor to void the release. There is language commonly used to communicate such an understanding. For example, if the Release provided that "this release will be void if any of the payments are not made on their scheduled dates," then plaintiff would be relieved from its obligation not to seek to collect on the judgment. Similarly, if there were another contract document here stating that "the attached release will be void if any payment is late," then plaintiff would be entitled to seek collection on the judgment. The question here, then, is whether the language the parties put in the Release has the same legal effect as these types of provisions.

■ Appearing just below the payment schedule, and just before the statement that the release in conditioned upon receipt of payments, is the phrase: "TIME IS OF THE ESSENCE FOR THESE DATES." "Time is of the essence" ("TOE") clauses, or provisions using different language to state clearly the same idea, are common in contract law. They tend to appear in real estate

contracts and construction contracts.[1] Breaches of such provisions generally are material breaches which relieve the non-breaching party from its duty to perform. *Koolvent Aluminum Awning Co. of N.J. v. Sperling,* 16 N.J.Super 444, 84 A.2d 762, 763 (1951) ("It must be acknowledged that where the parties have expressly stipulated that the time for the performance of their mutual undertaking shall be an intrinsic, essential and vital term of their compact, a lack of the specified punctuality is ordinarily fatal to the contractual rights of the delinquent party."); *see Neptune Res. and Dev., Inc. v. Teknics Indus. Sys., Inc.,* 235 N.J.Super. 522, 563 A.2d 465, 470 (1989) ("If time was of the essence then the breach was material and plaintiff had a right to cancel."); *Salvatore v. Trace,* 109 N.J.Super. 83, 262 A.2d 409, 418 (1969) ("Where time is of the essence of the contract as it is here, one seeking to enforce it either by way of specific performance or by an action for damages for breach of contract must first establish that he tendered performance at the time called for by the contract."). The question now is whether the inclusion of the TOE clause has the effect of conditioning the release of HACC upon plaintiff's timely receipt of the payments such that late payment constitutes material breach and permits plaintiff to void the release.

■ A court must endeavor to give effect to all terms in a contract "and the construction which gives a reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable." *Prather v. American Motorists Ins. Co.,* 2 N.J. 496, 67 A.2d 135, 138 (1949). To conclude that the parties did not mean to condition the Release upon the receipt of the payments by or on the exact dates specified would be to read the "TIME IS OF THE ESSENCE" out of the contract altogether and to render it utterly superfluous. This Court will not presume that the TOE provision here was engrafted thoughtlessly onto the Release. The phrase "time is of the essence" is a well-known and specialized term of art in contract law which makes manifest the parties' intent that tardy performance be treated as a material breach. As

the New Jersey Superior Court, Appellate Division, has stated:

> Making time of the essence is an effective, time honored tool of contract administration and enforcement. It provides certainty and objectivity in the definition of rights and obligations between contracting parties, particularly when it has been negotiated between the parties and expressly made a part of their agreement. The alternative is a date for performance which is subject to adjournment and, ultimately, to a test of reasonableness applied by a trier of fact.... Judicial tampering with the parties' agreement emasculates this tool and promotes litigation instead of the certainty and objectivity sought by the parties.

*Gorrie v. Winters,* 214 N.J.Super. 103, 518 A.2d 515, 517 (1986). Finally, if the "time is of the essence" language here is not given its ordinary meaning, then it will have no meaning at all. For plaintiff already has the right to sue for payment and interest, in the event a payment is not made, independent of any TOE clause.

■ Defendants counter that construing the contract as permitting plaintiff to refuse performance because HACC was late with a payment leaves "useless or inexplicable" the enforcement provision. This Court disagrees. The enforcement provision has a purpose even when the "time is of the essence" clause is construed as allowing plaintiff to void the release in the event of late payment. When a party issues a general release as an incident to a settlement agreement, it wishes to be clear that it is not barred from pressing a claim for the very thing for which it has settled. Thus, the inclusion of enforcement provisions such as the one here are standard in releases.

The TOE clause is not inconsistent with the enforcement provision. The former gives plaintiff the right to void the Release, in addition to the right the latter helps to preserve—the right to bring an enforcement action. Defendants, however, argue that the TOE provision should not be construed as giving plaintiff this additional remedy be-

---

**1.** In addition, it is presumed that "time is of the essence" in option contracts. *Brick Plaza, Inc. v.*

*Humble Oil & Refining Co.,* 218 N.J.Super. 101, 526 A.2d 1139, 1140 (1987).

cause the parties contracted, as manifested by the enforcement provision, to limit HACC's liability in the event of a breach. That is, defendants argue that plaintiff's sole recourse for a breach by HACC is to bring an enforcement action, one which perhaps would allow plaintiff to recover interest on delinquent payments. This Court disagrees.

■ First, nowhere in the enforcement provision, or anywhere else in the Release, is it stated or suggested that an enforcement action shall be plaintiff's *sole* remedy for a material breach, or that plaintiff has forfeited the right to withhold performance in the event of a material breach. Second, as explained above, the enforcement provision does have a purpose even if it is not construed to limit plaintiff's remedies. In contrast, defendants' chosen construction would read the TOE clause out of the Release. Third, such a remedy-limiting provision is not the type of provision that a court lightly should read into a contract. Fourth, to the extent the enforcement provision is ambiguous with respect to exclusivity of remedies, this ambiguity must be construed strongly against HACC because it drafted the Release. *In re Miller's Estate,* 90 N.J. 210, 447 A.2d 549, 555 (1982); *New York State Higher Educ. Servs. Corp. v. Lucianna,* 284 N.J.Super. 603, 666 A.2d 173, 175 (1995). In sum, the proposition that the enforcement provision bars plaintiff from voiding the Release is rejected.

### B. *Substantial Performance*

■ Defendants last argument is that since HACC made its first payment, albeit twenty-four days late, and made its second payment on the appointed date, it has performed substantially and should not suffer a "forfeiture" of the benefit it expected to receive from the settlement agreement. Defendants thus invoke the doctrine of substantial performance.

The concept of substantial performance is an equitable one generally utilized in the realm of building contracts but applied, where appropriate, to other contractual agreements as well. It allows one who has performed in good faith, though making some slight omissions or deviations from the letter of the contract or its specifications, so as to provide the other party

substantially what he bargained for, to recover the contract price less a sum sufficient to compensate the other party for or cover correction of the defective aspects of his performance.

*Amerada Hess Corp. v. Quinn,* 143 N.J.Super. 237, 362 A.2d 1258 (1976); *see Universal Computers (Sys.) Ltd. v. Datamedia Corp.,* 653 F.Supp. 518, 524 (D.N.J.1987). The doctrine is intended to protect the right to compensation of those who have performed "in all material and substantive particulars." *Perini Corp. v. Greate Bay Hotel & Casino, Inc.,* 129 N.J. 479, 610 A.2d 364, 378 (1992) (internal quotes omitted).

■ The doctrine of substantial performance must not be extended so far as to ignore the legal rights of the parties. *Gillman v. Bally Mfg. Corp.,* 286 N.J.Super. 523, 670 A.2d 19, 21 (1996). "When a contract expressly provides for expiration of a party's rights at a time certain, a court of equity will not interfere to substitute a different and more liberal agreement than that which existed between the parties." *Id.* More specifically, "[a]n express contract, making time a particular of it, cannot be ignored by a court of equity." *Collins v. Delaney Co.,* 71 N.J. Eq. 320, 64 A. 107, 107 (1906).

■ These authorities doom defendants' argument. The time for payments here was deemed by the parties to be "of the essence" of the contract. This Court cannot ignore the legal right to void the contract the parties thereby vested in plaintiff. HACC's obligation was to make payment by a certain date, and the TOE clause rendered any deficiency in that regard a material breach. HACC breached materially; it failed with regard to a substantive particular of the parties' agreement. Defendants will not be heard to claim that HACC nonetheless performed substantially. Put another way, the commission of a material breach and the type of equitable relief sought here are mutually exclusive.

## IV. CONCLUSION

■ In conclusion, because the parties made the payment dates "of the essence," and because HACC made its first payment twenty-four days late, HACC materially

breached the settlement contract. The Release became voidable at plaintiff's election on May 21, 1997.[2] This Court will grant summary judgment in plaintiff's favor on the issue of material breach and plaintiff's right to void the Release. An appropriate order will be entered.

**2.** Defendants have not raised any issues concerning plaintiff's acceptance of HACC's delinquent payment and HACC's timely second payment, and this Court will not create any. It should be stressed, however, that plaintiff indicated to HACC's counsel prior to, and upon, receiving these payments that it took the position that HACC was in material breach, that plaintiff was entitled to the full amount of the judgment (less credit for sums received), that plaintiff accepted the payments without prejudice to its claims that the full judgment was due, that plaintiff accepted the payments on "account of the debt," and that plaintiff reserved all rights. It suffices to say here that there can be no waiver or estoppel of plaintiff's right to void the Release under these circumstances. *Cf. Zulla Steel, Inc. v. A & M Gregos, Inc.*, 174 N.J.Super. 124, 415 A.2d 1183, 1188 (1980) (breach of contract not waived where plaintiff accepted late payments).